JAMES K. WOOD, in behalf of himself, &c., v. THE TOWN OF OXFORD et al

*Taxation—Constitutional Law—Qualified Voters—Municipal Corporations.*

1. Municipal corporations are instrumentalities of the State government, are public in their nature, and the Legislature has control over them and may enlarge or modify their powers as it deems proper, within the limits of the Constitution.

2. The Legislature may authorize municipal corporations to apply their revenue and credit to any legitimate public purpose within the scope of its organization, unless prohibited by the Constitution, and such

purposes as tend to the general good of the community, although the advantage does not reach every individual tax payer residing there, is such public purpose.

3. The Legislature may authorize municipal corporations to subscribe to the capital stock of railroad corporations or other like public enterprises, or even to donate its money or credit to such corporation, while it cannot authorize any subscription or donation to a merely private enterprise.

4. The ruling made in *Markham* v. *Manning*, 96 N. C., 132, and *McDowell* v. *The Construction Co.*, 96 N. C., 514, as to the meaning of the term "qualified voters" as used in the Constitution, and the effect of the provisions of Art. 7, §7, affirmed.

5. Where the act allowing a municipal corporation to contract a debt for other than necessary expenses, provided that such debt should be authorized by a vote of a majority of those voting and not by a majority of the qualified voters, but in fact a majority of the qualified voters did vote in favor of contracting the debt; *It was held,* that this cured the defect in the law, and that the vote authorized the corporation to contract the debt.

(*Taylor* v. *Com'rs*, 2 Jones Eq., 141; *Caldwell* v. *Justice*, 4 Jones Eq., 323; *Markham* v. *Manning*, 96 N. C., 132; *McDowell* v. *Construction Co.*, 96 N. C., 514; cited and approved).

MOTION to continue an injunction to the hearing, in a cause pending in GRANVILLE Superior Court, heard before *Merrimon, Judge,* at Chambers, in Henderson, February 26th, 1887.

The defendant, the "Oxford and Clarksville Railroad Company," is a corporation organized under and in pursuance of the statute, (Acts 1885, ch. 116,) and its prescribed purpose is to construct a railroad to be devoted to the transportation of passengers and freight, its terminal points to be the town of Oxford, in the county of Granville, and a point on the Virginia State line, to be fixed by its directors, within a compass prescribed. Its railroad may be extended to other like roads designated, and it may construct branch roads not exceeding thirty miles in length. Counties, townships, incorporated cities and towns, through which its road is to be con-

structed and located, are authorized, in the way and manner prescribed, to subscribe for the capital stock of that company, and to make "donations" to it; and to raise money for this purpose, they are respectively authorized to issue their bonds, with interest coupons attached, in the manner prescribed. But such subscriptions or donations cannot be made until a definite proposition to make the same shall have been submitted to the "qualified voters" of the township or town which it is proposed shall make the same. In case a "majority of the votes cast" shall be "for subscription," or "for donation," as is said in one section of the statute cited, or as to towns, as is said in another section, in case "a majority shall have voted for subscription," or "for donation," the same shall be made, &c.

The grounds and purpose of the action, and the relief sought by it, sufficiently appear from the eighth paragraph of the complaint, of which the following is a copy:

"8. Your petitioner, who sues in this behalf, for himself and other tax payers of said town, alleges that the acts of the said commissioners, in issuing said bonds, and making said donation, will entail a heavy burden and debt upon him and them; and that he is advised that the act incorporating the said railroad company is not constitutional, and that the bonds about to be issued by virtue of said act, are illegal and void, for that, (1.) The General Assembly had no authority to authorize the voters of said town to donate public money for the purpose set forth in the said act; (2.) That the power attempted to be conferred by said act does not come within the spirit or letter of the Constitution of the State; (3.) That in the canvass of the votes, as is required in section 8 of said charter, a majority only of the votes cast is required, whereas the affiant is informed that said act should have required a canvass of all the qualified votes, and that while the provision is not inserted in section 12 of said charter, nevertheless said section, referring to and adopting the lan-

guage of section 8, must have and bear the same meaning and interpretation. Wherefore, affiant prays that a restraining order may issue to said defendants, to show cause, before his Honor, Fred. Philips, at Chambers, at Greensboro, why an injunction shall not be granted forever enjoining them from the issue and donation of said bonds and the levy and collection of said taxes, to pay the same as aforesaid, and as in duty bound, he will ever pray."

A restraining order was granted, and also a rule upon the defendants to show cause at Chambers why an injunction until the hearing upon the merits should not be granted.

At the hearing of the motion for such injunction, it was denied, and from the order in that respect, the plaintiff appealed to this Court.

*Mr. John W. Hays* filed a brief, for the plaintiff.

*Messrs. Thos. B. Venable* and *R. W. Winston*, for the defendants.

MERRIMON, J., (after stating the facts). Municipal corporations, such as counties and incorporated cities and towns, are instrumentalities of the State government. They serve its political and civil purposes, more or less general in their nature and extent, and more particularly, where they are located. They are public in their nature, and the Legislature has control over them. It may determine and establish their purpose, and enlarge or modify their powers and authority from time to time; and it may create new ones, prescribing their powers and authority, as public necessity and convenience may require. It may confer upon them power to raise revenue by levying taxes and otherwise, and to use and apply the same for all legitimate public purposes, and likewise to create debts and issue their obligations to pay money for the like public purposes, except as its powers may be restrained by constitutional limitations. Such powers of the Legislature are to some extent, of its nature, and essen-

tial in the exercise of legislative authority, and in other respects, they are conferred upon it by the express provisions of the Constitution, or by necessary implication. They are freely exercised at every session of the General Assembly in effectuating the purposes of government by legislation.

It may be said in general terms, that the Legislature can authorize a county, city or town to use its revenues and credit for any legitimate public purpose within the scope of its organization, unless prohibited by the Constitution. This is necessarily so, because the ends to be attained by such municipalities cannot generally be accomplished without public expenditures. It may not always be easy to apply the rule of law to determine what is a legitimate object of such expenditures. It is clear, however, that they may be made for such public improvements and advantages as tend directly to provide for and promote the general good, convenience and safety of the county or town making them, as an organized community, although the advantage derived may not reach every individual citizen or tax payer residing there. Hence, it has been held that the Legislature could authorize a town to subscribe and raise money to pay for capital stock of a navigation company operating in its neighborhood. *Taylor* v. *Commissioners*, 2 Jones Eq., 141. It has also been held that a county could subscribe and issue its bonds to raise money to pay for capital stock of a railroad company, whose road was located through it. *Caldwell* v. *Justice*, 4 Jones Eq., 323.

Indeed, the principles applied in the cases just cited, have been recognized and acted upon uniformly in a great number of cases decided by this Court.

And upon the same principle, a county or town may be authorized by the Legislature, for like public purposes, to donate its money, its credit, or other appropriate thing, to an individual or corporation.

Such "donations" are not strictly such—they are not mere gratuities—they are made in consideration of the advantage, or supposed advantage, that the municipality, its business —its people, collectively and individually—and the public generally, directly and indirectly, derive from the public work, thus encouraged and helped. It may be conceded, a municipality could not have power to donate its revenues or credit to individuals or corporations in aid of a merely private enterprise or industry, because, in that case, the object is simply private gain—it does not in its nature and purpose, tend to afford public advantage. But it is otherwise when the enterprise or industry is public in its nature and purpose, and intended to confer public benefit, as well as secure private gain to its owners, as in case of a projected railroad. Although the road may belong to a private corporation, still its purpose and use are directly for the public use and advantage.

A chief purpose of counties, cities, and towns, is to secure public advantage and convenience, and thus public prosperity, by means of public works and enterprises, set on foot and prosecuted by themselves, or through individuals or corporations, and it can make no difference whether such works are encouraged by the county or town by taking the capital stock of a corporation, or by a "donation" of money or credit to it. In this case, the public benefit, or supposed benefit, is in substance paid for. This view seems to us just and reasonable, and substantially, it has been upheld by the highest Courts of many of the States of the Union, as well as by the Supreme Court of the United States. *Town of Queensbury* v. *Culver*, 19 Wall., 83; 1 Dill. Mun. Corp., §508. It is not our province to decide upon the wisdom or expediency of the provisions of the statute under consideration. It was the office of the Legislature to do that, and as these provisions do not contravene the Constitution, it is our duty to uphold and give them effect.

We are also of opinion, that the election as to the proposition to make the donation in question, was held, and the result ascertained, in substantial compliance with the statute and the provisions of the Constitution affecting it. It has been settled by repeated decisions at the present Term, that "qualified voters" are such only as are eligible, and have been registered according to law, and that a majority of the qualified voters means a majority of the voters lawfully registered. *Markham* v. *Manning*, 96 N. C., 132; *McDowell* v. *Construction Company*, 96 N. C., 514.

Now, it is clearly one of the declared purposes of the statute, (Acts 1885, ch. 116,) to authorize certain incorporated towns to make "donations" in the way prescribed, to the railroad company, the defendant, the Oxford and Clarksville Railroad Company, organized under and in' pursuance of its provisions. And it plainly requires a proposition to make such a donation, to be submitted to the "qualified voters" of the town which it was proposed should make the same. It may be, that the statute contemplates that if a simple majority of "the qualified voters" *voting*, shall be in favor of such donation, this shall be sufficient to authorize it to be made. This is questionable, but we need not decide whether it so provides or not, because the purpose to allow such donations to be made is manifest, and it appears in the case before us, that a clear majority of all the qualified voters of the town of Oxford voted in favor of the proposed donation of forty thousand dollars in question, thus certainly meeting the essential prerequisites provided by the statute and observing the provision of the Constitution (Art. VII, §7), forbidding towns and other municipal corporations to make a debt, except, &c., "unless by a vote of a majority of the qualified voters therein," and likewise observing the requirements of the charter of that town, (Acts 1885—Pr. Acts, ch. 21, §30). As the purpose of the Legislature to allow such donations to be made is clear and express, it is

sufficient, if the condition upon which it might be made, has certainly in the most adverse view of the proposition as to the vote, happened.

Unquestionably, the Constitution allows a county, city, or town to contract, pledge its faith, or loan its credit, for a proper purpose, if authorized to do so by the Legislature, when, and if a majority of the qualified voters therein shall vote in favor of the same.

In this case, the purpose, as we have seen, was lawful—the Legislature authorized the donation to be made, and a debt to that end to be contracted, and a majority of all the qualified voters in the town of Oxford voted in favor of the donation, and thus in favor of the debt to be made. Thus the statute and the Constitution allow, and sanction it, and it must be upheld as valid and lawful.

There is no error. Let this opinion be certified to the Superior Court according to law.

SMITH, C. J., (concurring). If the matter of the present action were *res integra*, and the question involved in the appeal an open one, I should be reluctant to give assent to the proposition that a municipal corporation, even under legislative sanction and with an approving popular vote, may make a donation of its bonds to a railroad company in aid of its work, and impose taxes for their payment. It certainly cannot do this to advance any mere business enterprise not of a public nature, for the incidental and substantial benefits its successful prosecution may confer upon a community in the midst of which it is carried on. In a case recently before the Supreme Court of the United States, was drawn in question the validity of an act of the General Assembly of Kansas, under which bonds of the city of Topeka were issued as a gratuity to the King Wrought Iron Bridge Manufacturing and Iron Works, to aid the company in erecting and operating bridge shops in that city, in expectation of the

advantages to be conferred upon the business interest of the community. In an elaborate opinion, citing many adjudications in its support, the act was held to be unconstitutional and the securities void, the Court. declaring, through Mr. Justice MILLER, " that there can be no lawful tax which is not laid for a public purpose." In reference to extending the debt—creating and taxing power beyond this limit, he thus speaks: "To lay with one hand the power of the government on the property of the citizen, and with the other to bestow it upon favored individuals to aid private enterprises, and build up private fortunes, is none the less robbery because done under the forms of law, and is called taxation." *Loan Association* v. *Topeka*, 20 Wall., 655–664.

More especially would I hesitate, in view of the heavy indebtedness pressing upon the State, which caused a provision to be inserted, §4 of Art. VII, in the Constitution of 1868, which forbade the State to lend its credit to any person, association, or corporation, unless in completing unfinished roads, or in which the State has a direct pecuniary interest, unless the subject is submitted to the vote of the people of the whole State, and be approved by a majority of those who shall vote thereon.

The same popular sanction is required when a municipal corporation proposes to create a debt, pledge its faith. or lend its credit, or to levy a tax, except for necessary expenses, and this restraint is put upon legitimate improvements contemplated, and taxation therefor; Art. IV, §7. But this does not extend to such as are not of a public nature.

But the authorities are numerous, that the aid rendered railroads, canals, and the like, which are both private undertakings and also *publici jures*, in the form of stock-subscriptions or in donations, is for a public purpose, and within the competency of the law-making power of the State, when not forbidden by the organic law, to bestow upon subordinate municipal bodies.

Yielding to the precedents and the practice, I concur in the opinion of the other members of the Court, and sustain the enactment, not being at liberty to do more than ascertain the legislative will, and when not in conflict with the fundamental law, give it effect.

No error.                                                    Affirmed.