W. T. BROWN, on behalf of himself and all other tax payers, &c., v. THE COMMISSIONERS OF HERTFORD.

*Municipal Corporations—Townships—Township Bonds—Constitution—County Revenue Subject to Legislative Control.*

1. Townships are within the power and control of the General Assembly, just as are counties, cities, towns, and other municipal corporations. It may confer upon them, or any single one of them, corporate powers, with the view to accomplish any lawful purpose. Such powers may be conferred for a *single* purpose as well as many. *Semble*, the people of localities may be incorporated into road districts, school districts and the like.

2. The General Assembly may empower a township, with the sanction of its qualified voters, to aid in the construction of a railroad by levying taxes and contracting a debt to raise money for that purpose.

3. The mere fact that other neighborhoods will derive incidental advantages from such action on the part of the township, is no objection to legislation of this kind.

4. An Act of Assembly directing that the county taxes, which might be levied upon the property and franchise of a railroad company in a certain township, should be applied, as far as necessary, to the payment of the interest on bonds issued by such township in aid of the railroad, is constitutional.

5. The General Assembly may direct how the ordinary county revenue
   shall be applied. It may direct that the revenue arising from a
   specified source shall be applied to a particular object.

CIVIL ACTION, tried before *Graves, J.,* at Fall Term, 1887,
of HERTFORD Superior Court.

The facts appear in the opinion.

*Mr. Geo. Cowper* and *Messrs. Pruden & Vann* (by brief), for
the plaintiffs.

*Messrs. R. B. Winborne* and *E. C. Smith,* for the defendants.

MERRIMON, J., This is a controversy, submitted to the
Court below without action, as allowed by the statute, (*The
Code,* §§ 567–569). The plaintiffs are tax payers of Mur-
freesboro Township, in the County of Hertford, and the de-
fendants are the commissioners of that county.

The statute (Acts 1887, ch. 365) incorporates *The Murfrees-
boro Railroad Company,* and sections fourteen and thirty-one
thereof, provide as follows:

Sec. 14. " That Murfreesborough Township, in Hertford
County, and Town of Murfreesboro, in said county, may
subscribe to the capital stock of The Murfreesboro Railroad
Company, or make donations to said company, to be secured
by the bonds of said Township, or said town, as the case
may be, bearing six *per centum* interest, as hereafter provided,
subject to the approval of the qualified voters of said Town-
ship or said town."

Sec. 31. " When any township shall subscribe its bonds to
the capital stock of said railroad company, or donate the
same, as provided in this Act, the county taxes, which shall
be levied and collected upon the property and franchise of
said company in said Township, shall be applied in pay-
ment of the interest on the said bonds, to the amount of
said interest, so long as the same shall accrue, and the excess
of said taxes, if any, shall be applied to general county pur-
poses; that when the said interest shall cease to accrue, by

reason of the payment of said bonds, the said taxes shall be applied to general county purposes."

Of the numerous questions raised, and submitted to the Court below, the following are the material ones as to which error is assigned :

"1. Has the General Assembly the constitutional power to authorize a township to vote its bonds to aid in building a railroad, running partly through said township, into an adjoining county?

2. Has it the power to direct the application of the taxes levied and collected on the property and franchise of said company, within said township, to the use of the township, as provided for in section 31 of said act; if not, does that provision render the whole Act unconstitutional?"

As to these questions, the Court decided :

"1st. That the Legislature has not the power under section 4, Article 7, of the Constitution, to authorize the issuing of the bonds, and the levying of the tax, provided for in chapter 365, Laws of North Carolina, session 1887; nor was the power of the Legislature enlarged, so as to authorize the same by section 14, Article 7, of the Constitution, as to a particular township.

2d. That the Legislature had not the power, under the Constitution, to direct the general tax levied upon the property of the said railroad, or to be levied, to be applied to the purpose named in section 31 of the Act; but this section does not render the whole Act unconstitutional, nor prevent the collection of the tax upon the property of the said railroad, and its application to general county purposes."

The appellants contend that these rulings are erroneous.

The Court gave judgment, that the defendants be enjoined perpetually against subscribing for the capital stock of the company named, and likewise against issuing the bonds of the township named, to pay for such stock, &c., and for costs.

The defendants, having excepted, appealed to this Court.

Several of the questions raised by the case agreed upon by the parties and submitted to the Court, involving the regularity and sufficiency of the order of the County Commissioners, directing an election to be held, and the conduct of it, to ascertain the voice of the electors of the township, in respect to the proposed subscription for capital stock of the railroad company named, were decided adversely to the appellee. As he did not appeal, these questions are not before us for our consideration, and hence, we express no opinion in respect to them, except so far as they may be incidentally affected by the questions we are called upon to decide. Indeed, they might, very properly, have been omitted from the transcript of the record on appeal.

The Constitution of this State, (Art. VII., §§ 3–4), as it prevailed before it was amended in 1877, and as amended, provided that the County Commissioners, of every county in the State, should divide the same into convenient districts, determine the boundaries thereof, and prescribe a name for each. It further provided, that when this was done, and report thereof was made to and approved by the General Assembly, that then " the said districts shall have corporate powers for the necessary purposes of local government, and shall be known as Townships."

Thus townships were established in every county invested with corporate powers.

But an amendment of the Constitution provided, as to that Article including the sections thereof cited, (§ 14 thereof,) that " the General Assembly shall have full power, by statute, to modify, change, or abrogate any and all of the provisions of this Article, and substitute others in their place, except sections seven, nine, and thirteen."

The Legislature, in the exercise of the power thus conferred upon it, enacted, (Acts 1876–'77, Chap. 141, § 7,) that " All the provisions of Article seven of the Constitution, inconsistent with this Act, except those contained in sections

seven, nine and thirteen, are hereby abrogated, and the provisions of this Act substituted in their place; *subject, however,* to the power of the General Assembly to alter, amend, or abrogate the provisions of this Act, and to substitute others in their stead, as provided for in section fourteen of Article seven of the Constitution." It further enacted, in the same statute, as follows: "Sec. 3. The townships heretofore created, or hereafter established, shall be distinguished by well defined boundaries, and may be altered, and additional townships created, by the Board of County Commissioners, but no township shall have, or exercise, any corporate powers whatever, unless allowed by Act of General Assembly, to be exercised under the supervision of the Board of County Commissioners."

The counsel for the appellee contended, on the argument before us, that the statute last cited abolished the provisions of the Constitution cited in respect to townships, and wholly deprived them of corporate powers and authority, and that the General Assembly has not power now to confer upon them such corporate powers, and particularly such powers for a single purpose, as for the purpose of subscribing for the capital stock of a railroad company, as in this case, and create a township debt, secured by bonds, to be put upon the markets to pay for such stock.

The view thus insisted upon is, we think, clearly untenable. It will be observed, that the provision of the Constitution, conferring power upon the General Assembly in respect to Article seven thereof, is clear, distinct and comprehensive; it confers *full* power to *modify, change* or *abrogate* its provisions, except as to those sections specified, and to *substitute others* in their stead.

This does not imply that the General Assembly shall exercise the power thus conferred, but once, and never afterwards. The effect of such an interpretation would be to give the Act of the Legislature as much permanency and un-

changeable effect, as if it were a constitutional provision; in that case, the statute could not be changed, modified, or repealed; and if such was the purpose of the amenders of the Constitution, they might as well have abolished Article seven thereof, and substituted one more acceptable for it. The more reasonable interpretation is, it seems to us, that the purpose was to confer upon the General Assembly full power to legislate in respect to the Municipal Corporations, provided in the Article mentioned, except as to the matters embraced by sections seven, nine and thirteen thereof; that is, power to create and abolish them; to amend, modify, or repeal the laws affecting them, from time to time, as the changing circumstances, the convenience and common good of the people generally, or in particular sections or localities, may require.

The Legislature, in the statute last cited in the sections above set forth, cautiously reserved the right and power "to alter, amend, or abrogate the provisions of this act, and to substitute others in their stead," and from time to time, in a great variety of ways, such power has been exercised by it.

Townships are, therefore, within the power and control of the General Assembly, just as are counties, cities, towns and other municipal corporations. It may confer upon them, or any single one of them, corporate powers, with the view to accomplish any lawful purpose, to promote the prosperity, safety, convenience, health, and common good of the people residing within them, and resorting thither, from time to time. And we can see no good reason why it may not confer such power for a single purpose, as well as many. There may be enterprises important to the people of localities—such as townships, road districts, school districts, and the like—that may be promoted by the exercise of corporate powers, to a limited extent, by such communities.

It is not necessary to advert here to the nature and extent

of the powers of the Legislature, in creating and controlling municipal corporations. We have had occasion to do so frequently, within the last two or three years. *White* v. *Commissioners*, 90 N. C., 437; *McCormac* v. *Commissioners*, Ibid., 441; *Dare County* v. *Currituck County*, 95 N. C., 189; *Mills* v. *Williams*, 11 Ired., 558; *Caldwell* v. *Justice*, 4 Jones Eq., 323; *Wood* v. *Oxford*, 97 N. C., 227.

We are unable to see any just reason why the people of a township, through which a railroad is located, shall not, if they see fit, aid in its construction, by taxing themselves, and creating a debt for the purpose, when the Legislature provides that they may, just as the people of a county, city, or town may do, and for the like considerations. It may be unwise or inexpedient, as a measure of economy, but the tax payers—electors—must judge as to that. In important respects, the citizens of a township are an organized community, separate from their neighbors, and they may derive great and special advantages from a railroad, to be located and constructed in their midst. The mere fact, that other neighborhoods will derive incidental advantages, is no good objection. If so, it would apply, generally, in the case of such aid extended by counties, cities, and towns. *Wood* v. *Oxford*, 97 N. C., 227.

The objection that the Legislature could not direct the county taxes levied upon the property and franchise of the railroad company named, within the township, to be applied to the payment of the interest accruing upon the bonds to be put upon the market, is unfounded. The section of the charter of the company (§ 31,) complained of, does not, in any way or respect, interfere with the levy of the taxes referred to; it only directs the application of the part of the county revenues arising from the source named, to a particular purpose. There is no provision of the Constitution that forbids this. The Legislature may direct how the ordinary county revenues shall be applied within the county for

any lawful public purpose. Thus, it might direct that the revenues, arising from a specified source, should be applied to the debt created in building a court-house, a jail, a poor-house, a public bridge, a public road, and the like. Counties are instrumentalities of government, and are subject to the control of the Legislature to a great extent, in the absence of constitutional limitation upon its powers. *Holton* v. *Commissioners*, 93 N. C., 430.

There is, therefore, error. The judgment must be reversed, and judgment entered in the Court below for the defendant, as stipulated in the case agreed upon and submitted to the Court. To that end, let this opinion be certified to the Superior Court, according to law.

It is so ordered.

Error. Reversed.