## S. WITTKOWSKY v. THE BOARD OF COMMISSIONERS OF JACKSON COUNTY.

(Filed 22 December, 1908.)

1. **Townships—Corporate Powers—Legislative Powers—Constitutional Law.**

    Under Revisal, sec. 1318, subdiv. 30, enacted in pursuance of the constitutional amendment of 1875, townships are not corporate bodies and have no corporate powers when not specially conferred by statute.

2. **Same—Bond Issues.**

    Townships may issue bonds to aid in the construction of railroads only under authority given by statute passed in accordance with the requirements of Article II, section 14, of the Constitution, respecting its several readings, the roll call, the "aye and no" vote, etc.

3. **Same—Interpretation of Constitution—Implication—County Divisions.**

    The restrictions imposed by Article II, section 14, of the Constitution on counties, cities and towns in pledging their credit or contracting a debt are by necessary implication applicable to townships, as they are but constituent parts of the county organization.

4. **Interpretation of Statutes—Townships—Bond Issue—Railroads, Aid to Finish.**

    Section 1996, The Code of 1883, does not confer on a township the right to issue bonds to aid in the construction of a railroad upon which work has not been commenced.

5. **Bond Issues—Constitutional Law—Legislative Journals—Notice to Purchaser.**

    When township bonds give notice upon their face of the act under which they were issued, and when an examination of the legislative journals would have disclosed that the act was not passed in accordance with the constitutional mandate, a purchaser is put upon notice of the defect in the issue.

ACTION heard by *Guion, J.,* who found the facts, by consent, at May Term, 1908, of JACKSON.

The Court, upon the pleadings and admissions, found the following facts material to the decision of this appeal:

The General Assembly of North Carolina, at its session of 1889, chartered the Carolina Mining, Manufacturing and Im-

provement Company (chapter 159, Private Laws 1889). Said corporation, among other things, was empowered to construct and operate "tramroads or railroads as public carriers," etc. At the session of 1891 the act of 1889 was amended and the corporation empowered to extend its operations into other counties named. Private Laws 1891, ch. 315. It was further provided in the amendatory act that, upon the petition of ten of the qualified voters of either of the counties or any of the townships in such counties within which said company was empowered to build railroads, the board of commissioners should submit to the voters of such counties or townships the question whether such counties or townships should issue bonds for the purpose of aiding said company in the construction of such roads, etc. It was further provided in said amendatory act (section 5) that the said townships in each and all the counties embraced in the charter of the said Carolina Mining, Manufacturing and Improvement Company are hereby incorporated for the purposes of this act, and the commissioners of the respective counties are hereby constituted and appointed the agents of said corporation for the said purposes; and if the said townships or either of them shall vote township bonds in aid of the construction of the said road or railroads the said commissioners shall, as agents of said townships or either of them, issue bonds in accordance with the terms of the propositions adopted by a majority of the voters of the township or townships whose bonds are to be issued. Neither of said acts were passed in accordance with the provisions of Article II, section 14, of the Constitution. They were not read on three several days in each house, nor was there any entry on the journals of the number voting for and against their passage. A petition having been filed before the Board of Commissioners of Jackson County by ten voters of Webster Township, in said county, for that purpose, an election was ordered to be held and the proposition submitted to the voters of said township to issue coupon bonds to the amount of $6,000 to aid in the construction of a railroad to be built by said improvement company from some point at or near Sylva, on the Murphy division of what is now the Southern Railroad, to Webster, in Webster Township, in said county,

the bonds to be issued in accordance with the provisions of the said statutes and to run thirty years. At said election a majority of the qualified voters of the township voted for the issuance of said bonds. The commissioners of Jackson County, pursuant to said election and said statutes, issued and delivered to the said mining and improvement company bonds to the amount of $2,000, with coupons attached, as provided by the statute. These bonds were issued pursuant to the terms of the order of the commissioners, the company having at that time completed the grading of the road. No other work has been done on said road by the said company and no other bonds were issued. At the time of the election no railroad was in process of construction from the points named in the petition or order of election, nor was any company engaged in constructing any railroad from and to said points at said date. Said bonds were not voted to aid in the completion of any railroad then begun, nor were the citizens of said township interested in having such railroad constructed further than is the usual interest in having a railroad built through their locality. The company sold the bonds described in the complaint to plaintiff about the year 1896 (being Nos. 11-20, inclusive), with the coupons attached, in the open market, without notice of any defect or irregularity in the issuing thereof, except such notice as was apparent upon the face of the bonds and the Journals of the House and Senate of the General Assembly in regard to the passage of the statutes, both of which are referred to in the face of the bonds, with the recital that they are issued in pursuance thereof.

A special tax was levied by the said Board of Commissioners of Jackson County on the property and polls of Webster Township to meet the interest on said bonds, regularly, after the issuing of said bonds, each year prior to the purchase of the said bonds by the plaintiff, S. Wittkowsky, and for some time thereafter, and the interest paid to plaintiff, as stated in plaintiff's complaint; and said board of commissioners levied said tax for one or more years and collected the same, but failed to pay over the same to the plaintiff and the other bondholders, and said sum is now in the hands of the Treasurer of Jackson County, N. C., or under the control of the said board of county commissioners.

The Code of 1883 was passed in. accordance with the provisions of Article II, section 14, of the Constitution. There are fifteen townships in Jackson County. Said railroad was to run only through Sylva and Webster, about three miles in length, and in no other portion of said county. There was due plaintiff on the matured coupons on said bonds 1 January, 1908, with interest, $725.90.

Upon the foregoing facts his Honor was of the opinion that said bonds were invalid, and rendered judgment for defendant. Plaintiff excepted and appealed.

*George H. Smathers* for plaintiff.
*Coleman C. Cowan, Felix E. Alley* and *Walter E. Moore* for defendant.

CONNOR, J. Plaintiff concedes that as the acts of 1889 and 1891 were not passed in accordance with the requirements of Article II, section 14, of the Constitution, the action of the commissioners in ordering the election and issuing the bonds was without authority, unless, as he insists, townships are not included in the article and section. It is too firmly settled by repeated decisions of this Court to be regarded as open to debate that the constitutional requirements in regard to the manner in which such acts are passed are mandatory and essential to their validity. The learned counsel, however, calls attention to the fact that townships are not named in the Constitution, and insists that, as counties, cities and towns are specifically named, townships are excluded, *expressio unius exclusio alterius.* The question thus presented has not before been called to our attention or decided. We are therefore without authority to aid us in its solution. The language of Article II, section 14, of the Constitution, is: "No law shall be passed to raise money on the credit of the State or to pledge the faith of the State, directly or indirectly, for the payment of any debt, or impose a tax upon the people of the State, or allow the counties, cities or towns to do so, unless," etc. It is manifest, therefore, that townships are not named as among the political divisions of the State, within the provisions of the act and section. Are they included by necessary implication? The answer to this ques-

tion presents an interesting line of investigation. Prior to 1868, strictly speaking, the only political divisions of the State were counties. Towns existed by virtue of charters. Militia districts, voting precincts, etc., were established by the county courts. They were for the more convenient administration of the affairs and government of the county, having no corporate powers whatsoever. The county was governed in its internal affairs by the justices of the peace, sitting in quarterly sessions. The town and township system which prevailed in the New England and some other States were unknown to our Constitution and laws. The counties were only political divisions of the State and were not municipal corporations. *White v. Commissioners,* 90 N. C., and cases cited.

When the Convention of 1868 framed the new Constitution there was a manifest purpose to introduce the township into our system; and while none then existed, or were created by the Constitution, provision was made for dividing the counties into "convenient districts," which should "have corporate powers for the necessary purposes of local government and be called townships." Article VII, sections 3-4. Pursuant to this constitutional provision, the boards of commissioners divided the counties into townships and made report to the General Assembly. An elaborate system of township government was thereupon established, with a board of trustees having charge of the public highways and other local matters of administration. This was unsuited to our people and their habits, and was later abolished by the General Assembly, and the township was made to serve practically the same purpose in the county governmental system as the district or precinct prior to 1868. In 1875, by an amendment to the Constitution, the Legislature was empowered to abrogate the article relating to county government and formulate such plan or system as it saw fit. Pursuant to this power, the General Assembly established practically the system now prevailing. Townships are not now corporate bodies nor have they "any corporate powers whatsoever, unless authorized by an act of the General Assembly." Revisal, section 1318, subdiv. 30; *Wallace v. Trustees,* 84 N. C., 164. This Court has held in several cases, and it is not now an open

question, that townships may, by observing the constitutional requirements, issue bonds to aid in the construction of railroads. *Wood v. Oxford,* 97 N. C., 227; *Brown v. Commissioners,* 100 N. C., 92; *Jones v. Commissioners,* 107 N. C., 248. We have also held that the Legislature may establish fence districts and school districts and confer upon them power to contract debts and issue bonds to raise money for the purpose of erecting fences, schoolhouses, etc., levying, through the county commissioners, taxes to pay the interest, provide a sinking fund and, at maturity, pay the principal of the bonds. As said by *Merrimon, C. J.,* in *Jones v. Commissioners, supra,* "The townships are constituent parts of the county organization." While townships and other taxing districts are sometimes referred to as *quasi* municipal corporations, they are but territorial sections of counties, upon which, for appropriate purposes, power is conferred to perform functions of government of local application and interest. Townships are not named in the Constitution, Art. II, sec. 14; neither are school districts or fence districts. We think that the term "county," used therein, includes all political or legislative subdivisions of the county, as townships, etc. The term "city or town" is appropriately used, because they are in a sense different from counties, municipal corporations having powers, functions, duties and liabilities conferred by charter. It is true that they are, in a certain but restricted sense, governmental agencies. All of this has been so often discussed that it is unnecessary to cite authorities. When the term "State" or "county" is used in Article II, section 14, it must by necessary implication include townships and impose upon the Legislature the same limitations in respect to one as to the other in passing laws authorizing the contraction of debts and the imposition of taxes. Any other conclusion would lend to the strange result that the county could lend its credit, pledge its faith, contract a debt and impose taxes only when a bill for that purpose had been passed after three readings on three several days, upon a roll call and entry on the journal, whereas the power could be conferred upon a township or other taxing district by the usual legislative methods. The danger of this class of legislation being hastily enacted is illustrated by this record.

It appears that, in a private bill to incorporate a mining and improvement company and another to amend the charter, power is conferred upon counties and townships to contract debts and issue bonds. There is nothing in the title of the bill to indicate that it contained any such provision. No railroad is named; no limit is fixed, either to the amount of the bonds or the time which they are to run. Townships, in the most general terms, are declared "bodies corporate." Certainly such loose methods of legislation, conferring such extensive powers, was never contemplated by the framers of the Constitution. To give the construction to the protective provision of that instrument contended for would be to do violence to its manifest purpose and meaning. Article VII, section 7, uses the terms "county, city, town or other municipal corporation." This does not throw much, if any, light upon the proper interpretation of Article II, section 14.

The plaintiff further insists that the bonds may be held valid under section 1996 of The Code of 1883. We had occasion to discuss the same contention in *Graves v. Commissioners,* 135 N. C., 49. These bonds do not come within any of the provisions of section 1996. That section makes no reference to township bonds; but if the word "county" be construed as including township the plaintiff is confronted by the difficulty that the bonds are not issued in the exercise of any such power, but expressly refer to the acts of 1889 and 1891 for their authority. No railroad was begun or in process of construction when the election was held; hence they could not have been issued for the purpose of completing a railroad, and in any aspect this is an essential requisite to the validity of bonds issued pursuant to section 1996. Conceding that the county commissioners have, by virtue of that section, power to subscribe to the completion of a railroad in which the people of the county have an interest, this power could not be exercised to fix a debt on one or more townships of the county. The fact that the road ran through only one township would make no difference.

With every inclination to hold political divisions of the State whose voters have at election approved the issue of bonds liable to honest purchasers, we find ourselves unable to do so in this

case. We have no right to disregard the plain mandate of the Constitution. The bonds gave notice on their face that the commissioners were issuing them pursuant to acts of the General Assembly, and an examination of its journals would have shown that the acts were not passed as the Constitution commanded. This, as uniformly held, put the purchaser upon notice of the defect in them. It would seem a wise rule, for the safety of such legislation, that an act authorizing a bond issue should by its title give notice of its purpose. This would insure its reference to the proper committee and its due consideration. If passed, the clerk would have notice that it came within Article II, section 14. Private charters are usually passed hastily and without that examination required in passing bills empowering the issuing of bonds and imposition of taxes. The judgment of his Honor must be

Affirmed.