MYRTIE ARNOLD, HARLEY EVANS, J. D. LARSON, W. E. LESH, SR., JOSEPH MONROE, AND R. E. SELLERS, CITIZENS AND TAXPAYERS OF SMITH-VILLE TOWNSHIP, BRUNSWICK COUNTY, PLAINTIFFS v. STEVE J. VARNUM, WILLIE E. SLOAN, FRANK THOMAS, IRA D. BUTLER, AND W. T. RUSS, JR., COUNTY COMMISSIONERS OF BRUNSWICK COUNTY, AND BRUNSWICK COUN-TY, A POLITICAL SUBDIVISION, DEFENDANTS; THE CITY OF SOUTHPORT, A MUNICIPAL CORPORATION, EUGENE B. TOMLINSON, JR., MAYOR, AND MARY McHOSE, JAMES HAROLD DAVIS, CONLEY D. KOONTZ, W. P. HORNE, DOROTHY GILBERT, WILLIAM FURPLESS, ALDERMAN; THE BOARD OF TRUSTEES OF SMITHVILLE TOWNSHIP J. ARTHUR DOSHER MEMORIAL HOSPITAL, LORRAINE BELLAMY, GEORGE MILLIGAN, HAROLD CRAIN, CHARLOTTE B. WILSON, EUGENE TOMLINSON, JR., KENNETH BELLAMY AND HERBERT SHAW, TRUSTEES; AND MARK P. CON-NAUGHTON AND WIFE, MARGARET S. CONNAUGHTON; JACKIE HERR-ING; OTTO K. MAEHL; JUNE BROWN AND CORA DAVIS, RESIDENTS, FREEHOLDERS AND TAXPAYERS OF SMITHVILLE TOWNSHIP, INTERVENOR, DEFENDANTS

No. 7713SC206

(Filed 7 September 1977)

1. **Appeal and Error §§ 14, 16; Rules of Civil Procedure § 60— judgment entered through clerical error—notice of appeal in apt time—correction of judgment**

The trial court properly denied intervenors' and defendants' motion that plaintiffs' appeal be dismissed on the ground that plaintiffs failed to file notice of appeal in apt time where the evidence disclosed that the trial judge stated his decision in court on 24 November and on the same day instructed counsel to prepare a judgment for approval and instructed the clerk to inform the public of the decision; the clerk improperly entered judgment on that day on his own ac-cord; the judge subsequently entered judgment which was filed on 6 December and plaintiffs filed notice of appeal on 8 December; and the judge thereafter, on his own motion, ordered that any entry of judgment made by the clerk on 24

Arnold v. Varnum

November be stricken as a clerical error and that the judgment be corrected to read 3 December. G.S. 1A-1, Rule 60.

2. **Counties § 3.1; Hospitals § 2.1— township—establishment of hospital—county commissioners as governing body**

   The statutory scheme set forth in G.S. 131-4 *et seq.* is a constitutional delegation of authority for a board of county commissioners to assume the role of "governing body" of a township for the purpose of establishing a township hospital and levying a tax to support that hospital.

3. **Counties § 3.1; Hospitals § 2.1— township—power to establish hospital—supervision of county commissioners**

   Plaintiffs' contention that county commissioners cannot act as the governing body of their township for the reason that in this State the township is only a geographical subdivision and not a governing unit with corporate powers is without merit, since the General Assembly by Session Laws of 1917, Ch. 268, amended Chapter 42 so as to confer upon townships the power to establish and maintain public hospitals, that power to be exercised under the supervision of the board of county commissioners.

4. **Hospitals § 2— township hospital—taxation of township residents—no non-uniform tax**

   Plaintiffs' contention that G.S. 131-4 *et seq.* providing for the establishment of public hospitals is unconstitutional because the levy of taxes within a township unit leads to non-uniformity in taxation is without merit.

APPEAL by plaintiffs from *McKinnon, Judge.* Judgment originally dated 24 November 1976 but subsequently entered 6 December 1976. Appeal by Intervenors from McKinnon, Judge. Judgment entered 13 December 1976. Heard in the Court of Appeals 9 June 1977.

Plaintiffs, who bring this action as a class action, are residents of Brunswick County and taxpayers of Smithville Township within Brunswick County. The individual defendants are the County Commissioners of Brunswick County. Plaintiffs alleged, *inter alia*:

"On or about January 5, 1976 the aforementioned Commissioners purporting to act as the governing body of Smithville Township and under the purported authority of N.C.G.S. 131-4, et seq., accepted a petition and ordered an election held in Smithville Township on the question of an ad valorem tax on the residents of said Township to support the issuance of bonds for a public hospital in Smithville Township. Thereafter an election was held on August 17, 1976, which apparently passed in favor of a tax levy and issuance of bonds for the purpose expressed. Presently, the County Commissioners have expressed their intention of implementing their action up to now by imposing a tax on properties in Smithville Township and issuing

Arnold v. Varnum

bonds for such purposes and in general by proceeding to carry out the terms of N.C.G.S. 131-4 through N.C.G.S. 131-28. In summary said Commissioners are threatening to tax the property owners of Smithville Township and to issue bonds for creating and maintaining a hospital to be located in said Township."

Plaintiffs further alleged that G.S. 131-4 *et seq.*, "as it would relate to and be applied to" Smithville Township, is unconstitutional, and that even if the constitutionality of the statute should be upheld, the election of 17 August 1976 is a nullity. They prayed that the County Commissioners and the County of Brunswick be permanently restrained from proceeding to assess ad valorem tax on the taxpayers of Smithville Township, appoint trustees or issue bonds under the authority of G.S. 131-4 *et seq.*

Upon motion, the City of Southport, its Mayor, and Board of Aldermen, the Board of Trustees of Smithville Township Hospital, and some of the residents, freeholders and taxpayers of Smithville Township were allowed to intervene. They filed answer in which they denied all allegations relating to the unconstitutionality of the statute and the nullity of the election, and moved for judgment on the pleadings.

Defendants, in their answer, also denied the material allegations of the complaint and moved for summary judgment. Intervenors also filed a motion for summary judgment. The parties stipulated that there were no justiciable issues of fact and that the matter could be heard on the motions for summary judgment based upon issues of law raised by the pleadings.

The court entered judgment for defendants and intervenors and plaintiffs appealed. Intervenors subsequently moved that plaintiffs' appeal be dismissed, and from order denying that motion, intervenors appealed.

*Lee and Lee, by J. B. Lee, for plaintiff appellants.*

*Prevatte, Herring, Prevatte & Owens, by James R. Prevatte, for defendant appellees.*

*Murchison, Fox and Newton, by Carter T. Lambeth and Michael R. Isenberg, for intervenor appellees.*

MORRIS, Judge.

Intervenors appeal from the denial of their motion that plaintiffs' appeal be dismissed.

Arnold v. Varnum

[1]   The judgment entered by Judge McKinnon bears the date of 24 November 1976. The record indicates that it was filed 6 December 1976. Appeal entries of plaintiffs are dated 6 December 1976 and bear the filing date of 8 December 1976. On 9 December 1976, defendants and intervenors moved to dismiss the appeal. The motion recites, *inter alia*, the following:

Oral arguments on the motions for summary judgment took place on the afternoon of Monday, 22 November 1976. At the conclusion of the arguments, the court notified counsel for all parties that he would render a decision on Wednesday, 24 November 1976. On 24 November 1976, the court granted defendants' and intervenor-defendants' motions for summary judgment and denied all of plaintiffs' claims for relief in open court "which was noted by the Clerk in the minutes of the Superior Court of Brunswick County for the November 22, 1976 session, as directed by Judge Henry McKinnon . . . ." The court directed counsel for defendants to prepare and submit a judgment for approval. Entry of judgment took place on 24 November 1976 in open court. Plaintiffs did not give oral notice of appeal and under Rule 3(a)(2), North Carolina Rules of Appellate Procedure, had only 10 days from 24 November 1976 within which to file notice of appeal with the clerk, which time expired 6 December 1976 at 5:00 p.m. Plaintiffs failed to file notice of appeal with the clerk within the time limit, and counsel for defendants and intervenor-defendants were not notified of an appeal within the time limit. On 8 December 1976, plaintiffs purported to file notice of appeal with the clerk.

On 13 December 1976, plaintiffs filed a verified motion to amend judgment. The motion was signed by J. B. Lee, of counsel for plaintiffs. He averred that following the Monday afternoon hearing, he returned to Whiteville. On Wednesday, 24 November 1976, he called Mr. Carter Lambeth and asked Mr. Lambeth to inquire of Judge McKinnon whether his (Lee's) presence in court for the rendering of decision would be required. If the Judge answered affirmatively, Mr. Lambeth was requested to call Mr. Lee so Mr. Lee could leave his office in Whiteville and return to Southport. Mr. Lambeth did not call back, but later that day Mr. James Prevatte did call Mr. Lee's office and leave word with Mr. Lee's secretary that the court's decision had been "announced". Mr. Lee averred that he was informed and believed that Mr. Prevatte also stated that he would prepare judgment for approval prior to submission to Judge McKinnon. On 2 December 1976, Mr. Lee received in the mail a photocopy of the judgment and a photocopy of a letter to Judge

McKinnon stating that Mr. Lee had been furnished a copy with the request that he review it and notify either Mr. Prevatte or Mr. Lambeth if changes were requested. Mr. Lee intended to file his appeal entries on Friday when Judge McKinnon was to hold criminal court in Whiteville. However, when he went to the courthouse, he found that court had broken down and there was no Friday court. On Monday he submitted appeal entries to Judge McKinnon. At that time, Mr. Lee discovered that the judgment had been signed and was dated 24 November 1976. Copies of appeal entries were forwarded to Mr. Lambeth and Mr. Prevatte. Counsel had discussed the matter of appeal, and it was understood that regardless of the decision, an appeal would be taken. The course of dealings among counsel had been informal and Mr. Lee assumed that adequate notice to all parties would be sufficient compliance with the rules. On Wednesday, 8 December 1976, Mr. Lee was informed that there was some question with respect to whether an appeal had actually been taken. In that morning's mail, he received a photocopy of the judgment, marked "a true copy", and this was the first time he had seen a signed copy of the judgment. It bore filing date of 6 December 1976. On 10 December 1976, he received copy of motion to dismiss appeal and on the same date prepared and filed new appeal entries and served them on Mr. Lambeth and Mr. Prevatte. The motion requested ". . . that the judgment be amended under Rule 59 of the North Carolina Rules of Civil Procedure and the court on its own motion correct and declare what its intentions were in entering same."

On 14 December 1976, there was filed a "Memorandum and Order Amending Judgment" which had been signed by Judge McKinnon on 13 December 1976. In this order, the court noted that he was not advertent to any controversy with respect to the date of entry of judgment until Wednesday, 8 December 1976, when so advised by Mr. Lee. The order further recited:

"Because of considerable public interest expre•sed, the undersigned stated in court the conclusions of his decision and furnished to Mr. Prevatte a memorandum of certain conclusions that the court felt appropriate to be included in the judgment, and directed him to see to the preparation of a judgment for submission to other counsel and the court. Because of the Thanksgiving holiday, this session of court adjourned on November 24, 1976. The undersigned did not consider these actions to be entry of judgment and made no direction to the clerk with respect to entry of judgment. A handwritten memoran-

dum of the conclusions made was furnished to Mr. Louis Hazel, Clerk, for his use in advising the press and others interested of the rulings and not as an official court record."

"It was not the intention of the undersigned that the instructions to Mr. Prevatte on November 24, 1976, to prepare a judgment, or the public statement of the decision of the court, on that date, be an entry of judgment, and any clerical entry based on the undersigned's actions on that date was a clerical error. It was the intention of the court that judgment be entered when the judgment was signed after attorneys for all parties had had an opportunity to inspect the form of the judgment, and the signing of the judgment with the typed date of November 24, 1976, was an inadvertence and clerical error on the part of the undersigned."

The court then, on its own motion, ordered ". . . that any entry of judgment made by the Clerk in this cause on November 24, 1976, be stricken as a clerical error, and that the date of the judgment heretofore signed be corrected to read December 3, 1976." The court, in this order, denied the motion to dismiss the appeal.

Plaintiffs concede that notice of appeal was not given in open court. Therefore, appeal must be taken within 10 days after the rendition of a judgment which is rendered in session. G.S. 1-279; Rule 3(c), North Carolina Rules of Appellate Procedure. Filing by mail with the clerk is timely only if received by the clerk "within the time fixed for filing". Rule 26(a), North Carolina Rules of Appellate Procedure.

G.S. 1A-1, Rule 58, provides:

"Upon a jury verdict that a party shall recover only a sum certain or costs or that all relief shall be denied or upon a decision by the judge in open court to like effect, the clerk, in the absence of any contrary direction by the judge, shall make a notation in his minutes of such verdict or decision and such notation shall constitute the entry of judgment for the purposes of these rules. The clerk shall forthwith prepare, sign, and file the judgment without awaiting any direction by the judge.

In other cases where judgment is rendered in open court, the clerk shall make a notation in his minutes as the judge may direct and such notation shall constitute the entry of judgment

for the purposes of these rules. The judge shall approve the form of the judgment and direct its prompt preparation and filing.

In cases where judgment is not rendered in open court, entry of judgment for the purposes of these rules shall be deemed complete when an order for the entry of judgment is received by the clerk from the judge, the judgment is filed and the clerk mails notice of its filing to all parties. The clerk's notation on the judgment of the time of mailing shall be prima facie evidence of mailing and the time thereof."

Intervenor appellees argue that the first paragraph of Rule 58 is applicable here because the judge denied all claims for relief of the plaintiffs and the clerk made notations in the minutes of the decision of the court, the court having made no contrary direction.

The matter was being heard upon the motion of plaintiffs for directed verdict based on the pleadings and motions of defendants and intervenor-defendants for summary judgment. In effect, the trial court denied the motion of plaintiffs and allowed the motions of defendants and intervenors. The judge directed the preparation of judgment but did not direct the clerk to enter judgment in the minutes. Judge McKinnon, whose circumspection and reputation for veracity cannot be questioned and are not questioned by appellants, stated unequivocally that it was not his intention that his instructions to Mr. Prevatte in open court on 24 November 1976 to prepare a judgment or the public statement of the court's decision constitute an entry of judgment. He further stated in his order that he did not direct entry of judgment and that any entry in the minutes based on his actions was a clerical error.

It is clear that Judge McKinnon purposely did not direct entry of judgment but directed that a judgment be prepared for submission to opposing counsel and to him for approval. It is also clear that under G.S. 1A-1, Rule 60, "Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the judge at any time on his own initiative. . . ." This Judge McKinnon has done, and in his denial of appellant's motion to dismiss we find no reversible error.

[2]　As to plaintiffs' appeal, in the judgment entered allowing the motions for summary judgment, the court made the following conclusions of law:

"1. That the statutory scheme of Article 2, Chapter 131 of the General Statutes of North Carolina is a constitutional delega-

tion of authority for the Board of Commissioners of Brunswick County to assume the role of 'governing body' of Smithville Township for the purposes specified in that article.

2. That the provisions of Article 2, Chapter 131 of the General Statutes of North Carolina and the actions of the Board of Commissioners of Brunswick County pursuant thereto in accepting the petition calling for the election and proceeding to levy a tax on property in Smithville Township are not unconstitutional in any respect as alleged or suggested by the plaintiffs.

3. That the County Commissioners of Brunswick County are empowered by virtue of North Carolina General Statute 131-5 and the referendum election of August 17, 1976 to levy a four cent (4¢) tax per hundred-dollar valuation on property in Smithville Township for the year 1976 and subsequent years for the support and maintenance of a township hospital."

Plaintiffs' sole assignment of error is to the court's conclusions of law and to the signing and entry of the judgment. By this assignment of error plaintiffs ask us to determine two specific questions: (1) Whether the County Commissioners of Brunswick County can act as the governing body of Smithville Township and establish a township hospital pursuant to G.S. 131-4 *et seq.*, and (2) whether a township in North Carolina may constitutionally become a governing unit and a taxing base for supporting a township hospital. Determination of whether the statutory scheme of G.S. 131-4 *et seq.* is a constitutional delegation of authority for a county board of commissioners to assume the role of a "governing body" of a township for the purpose of implementing the enabling legislation will, we think, necessarily answer the questions raised by plaintiffs.

The pertinent portions of Article 2, Chapter 131 of the General Statutes of North Carolina are:

"Any county, township, or town may establish a public hospital in the following manner:

(1) Petition Presented. — A petition may be presented to the governing body of any county, township, or town, signed by 200 resident freeholders of such county, township, or town, 150 of whom, in the case of a county, shall not be residents of the city, town, or village where it is proposed to locate such hospital, asking that an annual tax may be levied for the establishment and maintenance of a public hospital at a place in the county, township, or town named therein, or to be thereafter selected

by the governing body of such county, township or town, and specifying the maximum amount of money proposed to be expended in purchasing or building such hospital.

(2) Election Ordered. — Upon the filing of such petition the governing body of the county, township, or town shall order a new registration and shall submit the question to the qualified electors at the next general election to be held in the county, township, or town, or at a special election called for that purpose, first giving 90 days' notice thereof by publication once a week for four successive weeks beginning 90 days before the day of said election in one or more newspapers published in the county, township, or town, if any be published therein, and by posting such notice, written or printed, in each township of the county, in case of a county hospital, which notice shall include the text of the petition and state the amount of the tax to be levied upon the assessed property of the county, township, or town. The election shall be held at the usual places in such county, township or town for electing officers, the election officers shall be appointed by the board of county commissioners and the vote shall be canvassed in the same manner as in elections for officers for such county, township, or town.

No action to question the validity of any such election shall be brought or maintained after the expiration of 60 days from the canvassing of said vote, and after the expiration of said period it shall be conclusively presumed that said election has been held in accordance with the requirements of this section, unless within said period such action is instituted.

(3) Tax to Be Levied. — The tax to be levied under such election shall not exceed one fifteenth of one cent (1/15 of 1¢) on the dollar ($1.00) for a period of time not exceeding 30 years, and shall be for the issue of county, township, or town bonds to provide funds for the purchase of a site and the erection thereon of a public hospital and hospital buildings."

The statute further (1) requires the governing body to submit to the qualified electors the question of whether such a tax shall be levied and, if the majority of the qualified voters favor the levying of such a tax, the governing body shall levy the tax to be collected in the same manner as other taxes, credited to the "Hospital Fund" and paid out on the order of the hospital trustees only for the purposes authorized by the statute; (2) requires the governing body to appoint seven trustees and provides for their terms and subsequent

election; and (3) sets forth the duties and powers of the trustees, manner of filling vacancies, meetings, and reports required to the governing body.

[3]  Plaintiffs do not contend that the Commissioners of Brunswick County have failed in any respect to follow the statutory procedures. Their contention is that they cannot act as the governing body of Smithville Township for the reason that in this State the township is only a geographical subdivision and not a governing unit with corporate powers.

Unquestionably the township as established by the Constitution of 1868 has disappeared from the scene in this State. Section 5 of Article VII of that Constitution provided for the election of a clerk and justices of the peace and set out their powers. Sections 3 and 4 of Article VII provided for the counties to be divided into special districts known as townships which would have corporate powers for the necessary purposes of local government. The General Assembly, in order to give effect to the constitutional provisions, provided by statute that all actions by and proceedings against a township should be in the name of its board of trustees, who were also given the power to levy and collect taxes. Bat. Rev. Ch. 112, §§ 2 and 19. History has revealed, as plaintiffs point out, that this type of government was not cognate to the traditional subdivisions of government in the South and was totally unsuccessful and short lived.

The statutory provisions giving trustees certain powers were expressly repealed by Session Laws of 1873-74, Ch. 106. *See also Wallace v. Trustees*, 84 N.C. 164 (1881). In *Wallace*, the Supreme Court noted that the General Assembly of 1876-77 ". . . under the power given it in the amended Constitution of 1875, enacted what is generally known as the 'County Government Act', whereby all the provisions of the Constitution of 1868, in regard to township board of trustees were abrogated, and the provisions of the act substituted in place thereof." *Id.* at 165. After further discussion of the provisions of the County Government Act, the Court, speaking through Ruffin, J., said:

"Hence we conclude that there can be no doubt of the purpose of the Legislature to take away from the township board of trustees all corporate powers; and that it has not only done so in express words, but has destroyed their very existence as corporate bodies." *Id.* at 167.

Plaintiff argues that if a township has no corporate existence, it is not a governmental unit and has no governing body. This argument, however, fails to recognize that

">... it is within the power and is the province of the legislature to subdivide the territory of the state and invest the inhabitants of such subdivisions with corporate functions, more or less extensive and varied in their character, for the purposes of government.... Indeed, it seems to be a fundamental feature of our system of free government, that such a power is inherent in the legislative branch of the government, limited and regulated, as it may be, only by the organic law....

It is in the exercise of such power that the legislature alone can create, directly or indirectly, counties, townships, school districts, road districts, and the like subdivisions, and invest them, and agencies in them, with powers corporate or otherwise in their nature, to effectuate the purposes of the government, whether these be local or general, or both. Such organizations are intended to be instrumentalities and agencies employed to aid in the administration of the government, and are always under the control of the power that created them, unless the same shall be restricted by some constitutional limitation. Hence, the legislature may, from time to time, in its discretion, abolish them, or enlarge or diminish their boundaries, or increase, modify or abrogate their powers. It may provide that the agents and officers in them shall be elected by the electors, or it may appoint them directly, or empower some agency to appoint them, unless in cases where the constitution provides otherwise, and charge them with duties specific and mandatory, or general and discretionary in their character. Such power in the legislature is general and comprehensive, and may be exercised in a great variety of ways to accomplish the ends of the government." (Citations omitted.) *McCormac v. Commissioners*, 90 N.C. 441, 444-45 (1884).

While it is true that the General Assembly did, by the County Government Act, abolish the corporate powers theretofore conferred upon townships, section 3 of that act provided:

"The townships heretofore created or hereafter established shall be distinguished by well defined boundaries, and may be altered, and additional townships created by the board of county commissioners, but no township shall have or exercise any corporate powers whatever, *unless allowed by act of general*

*assembly, to be exercised under the supervision of the board of county commissioners."* (Emphasis supplied.)

So it appears that the General Assembly, while not abolishing townships, did abolish their broad corporate powers. At the same time, it recognized that it could very well be necessary to vest townships with governmental powers to be supervised by the county commissioners of the county in which the township lies.

In *Brown v. Commissioners*, 100 N.C. 92, 97-98, 5 S.E. 178, 181 (1888), the Court, speaking through Merrimon, J., said:

"Townships are, therefore, within the power and control of the General Assembly, just as are counties, cities, towns and other municipal corporations. It may confer upon them, or any single one of them, corporate powers, with the view to accomplish any lawful purpose, to promote the prosperity, safety, convenience, health, and common good of the people residing within them, and resorting thither, from time to time. And we can see no good reason why it may not confer such power for a single purpose, as well as many. There may be enterprises important to the people of localities—such as townships, road districts, school districts, and the like— that may be promoted by the exercise of corporate powers, to a limited extent, by such communities."

With these principles in mind, we now look at the statute under which defendants acted. Article 2 of Chapter 131 of the General Statutes, entitled "Hospitals in Counties, Townships, and Towns," was enacted in its original form by the General Assembly as Public Laws of 1913, Chapter 42. It was entitled "An Act to Enable Counties to Establish and Maintain Public Hospitals, Levy a Tax and Issue Bonds Therefor, Elect Hospital Trustees, Maintain Training Schools for Nurses, Etc." Section 1 provided: "Any county may establish a public hospital in the following manner. . . ." The act referred to counties and boards of commissioners throughout. The General Assembly, by Session Laws of 1917, Ch. 268, amended Chapter 42. The amending statute was entitled "An Act to Amend Chapter 42, Public Laws of 1913, so as to Extend Privileges for the Construction and Maintenance of Public Hospitals to Townships and Towns." That act was brief and simple. It provided

"[t]hat the word 'county' wherever it occurs in chapter forty-two, Public Laws of one thousand nine hundred and thirteen, shall be followed by the words 'township and town', and

wherever the word 'counties' appears it shall be followed by the words 'townships and towns', and wherever the words 'board of county commissioners' appears they shall be stricken out and the words 'governing body' shall be inserted in lieu thereof."

There can be no doubt that the General Assembly intended to confer upon townships the power to establish and maintain public hospitals. Under section 3 of the County Government Act, the power so conferred would be exercised under the supervision of the board of county commissioners.

*Jones v. Commissioners*, 107 N.C. 248, 12 S.E. 69 (1890), is particularly helpful in analyzing the case *sub judice*. The action there was brought to test the validity of an election held in Holloway's Township of Person County to ascertain whether a majority of the votes cast would favor subscribing to the capital stock of the Roxboro Railroad Company. The county commissioners, having ascertained that the majority of the votes cast were in favor of the subscription, appointed an agent to subscribe for the stock in the amount specified on the ballot. Thereafter, bonds were issued and taxes levied to pay the interest accruing thereon and to provide a sinking fund. The statute provided that the County of Person, or any township therein, could subscribe for the capital stock of the Railroad Company up to $10,000, and if the majority of the votes held at an election to be held as provided in the statute should be in favor of the subscription, the county commissioners should, in addition to the other taxes levied, levy upon all the property in the township a tax sufficient to pay the interest on the bonds issued on account of the subscription and provide a sum equal to one-tenth of the subscription for the purpose of a sinking fund. One of the contentions of the plaintiffs was that a township had no corporate existence, and the statute was, therefore, void as to it. In disposing of this contention, the Court said:

"This contention is unfounded. Townships have a distinctive existence for specified purposes created by statute (The Code, sec. 707, pars. 13 and 14), and the Legislature may confer upon and invest them with corporate powers for a particular pertinent purpose, as to subscribe for the capital stock of a railroad company, to issue its bonds to raise money to pay for the same, to levy taxes upon the property of the taxpayers therein to pay the accruing interest upon such bonds, and to pay the same at their maturity. And there is no reason why the statute may not require the county commissioners to order the election, ascertain the result thereof, issue bonds and levy taxes in the

township, as was done in this case. Indeed, such provision was convenient and expedient. The townships are constituent parts of the county organization, and county officers may well be charged with duties and authority in respect to debts they may be allowed by statute to contract. It is settled that townships may subscribe for the capital stock of railroad companies when empowered for that purpose by statute. *Wood v. Oxford*, 97 N.C., 227; *Brown v. Comrs.*, 100 N.C., 92 and cases there cited." *Id.* at 265, 12 S.E. at 74.

While admittedly the statutes under consideration in *Jones* and *Brown* contain more particular directions as to the functions of the county commissioners, we think the principle is the same. Indeed, in *Wittkowsky v. Commissioners*, 150 N.C. 90, 94-95, 63 S.E. 275, 277 (1908), the Court said:

"This Court has held in several cases, and it is not now an open question, that townships may, by observing the constitutional requirements, issue bonds to aid in the construction of railroads. (Citations omitted.) We have also held that the Legislature may establish fence districts and school districts and confer upon them power to contract debts and issue bonds to raise money for the purpose of erecting fences, schoolhouses, etc., levying, through the county commissioners, taxes to pay the interest, provide a sinking fund and, at maturity, pay the principal of the bonds. As said by *Merrimon, C. J.*, in *Jones v. Commissioners, supra*, 'The townships are constituent parts of the county organization.' While townships and other taxing districts are sometimes referred to as *quasi* municipal corporations, they are but territorial sections of counties, upon which, for appropriate purposes, power is conferred to perform functions of government of local application and interest."

[4] Plaintiffs further contend that the statute is unconstitutional because the levy of taxes within a township unit leads to non-uniformity in taxation. They do not urge that there cannot be two taxing units. They do argue, however, that the second taxing unit must be a uniform division where there is a "community of interest", which, they say, is unknown to townships.

Since the General Assembly has the power to confer upon townships corporate powers to enable the township to accomplish the purpose of promoting the prosperity, safety, convenience, health and common good of the people residing within that township, it is entirely appropriate that only the township itself

may act to finance and pay for the specific purpose. *See Commissioners v. State Treasurer*, 174 N.C. 141, 93 S.E. 482 (1917). In the present case, 84% of the voters in Smithville Township voted for the levy of a tax to support a township hospital. It is completely obvious that the large majority of voters banded together to tax themselves to pay for a health service they felt was needed to promote the health, safety, convenience, and common good of all the people in the township. That this tax levy would not constitute double taxation has been well settled in this State. *E.g., Jamison v. Charlotte*, 239 N.C. 682, 80 S.E. 2d 904 (1954). Nor does plaintiffs' argument that G.S. 131-4 *et seq.*, is a local act prohibited by N.C. Constitution, Art. II, § 24, have any efficacy. The statute is clearly a general law. *Sides v. Hospital*, 287 N.C. 14, 213 S.E. 2d 297 (1975).

Plaintiffs further contend that to allow the county commissioners to act as the "governing body" under the statute creates a hiatus involving certain vital situations enumerated by plaintiffs as follows:

1. How can corporate powers be conferred on a township except through its governing body?

2. Who is to sue or be sued?

3. Who assumes the governmental authority or supervision of the township hospital?

4. Who can enter into a contract?

5. Who protects the properties of the hospital?

6. Who answers to the electorate?

7. Who exercises police powers?

We deem it unnecessary to discuss these seriatim. Suffice it to say that in our opinion the statute provides for the appointment of trustees and, in other respects, adequately sets out the procedures for the operation of the hospital together with the duties and responsibilities of the trustees and commissioners.

Finally, plaintiffs argue that the statute is violative of N.C. Constitution, Art. VI, § 9(1), which prohibits the concurrent holding by any one person of any two elective offices in this State. We fail to see the applicability of this argument to the present situation. G.S. 131-7 merely requires the county commissioners to appoint the trustees to hold office until the next general election when the electorate shall elect the trustees. Nothing in Article 2 of Chapter 131

requires the commissioners to act as trustees, either by appointment or election.

[2]  For the reasons stated herein, we hold that the statutory scheme set forth in G.S. 131-4 *et seq.* is a constitutional delegation of authority for a board of county commissioners to assume the role of "governing body" for the purpose of implementing that enabling legislation, including, of course, the levying of a tax to support a township hospital.

The orders from which plaintiffs and intervenors appeal are both affirmed.

Judges PARKER and CLARK concur.