## T. C. WHITE v. COMMISSIONERS OF CHOWAN.

*Counties and County Commissioners—Roads and Bridges.*

A county is not liable in damages for an injury to the plaintiff, occasioned by a defective bridge forming a part of the highway across a stream, in the absence of any statutory provision. Distinction between towns and counties and their corporate powers and liabilities, stated by MERRIMON, J.

(*Mills* v. *Williams*, 11 Ired., 558; *Caldwell* v. *Justices*, 4 Jones' Eq., 323; *Kinsey* v. *Justices*, 8 Jones, 186; *State* v. *Justices*, 4 Hawks, 194; *Meares* v. *Wilmington*, 9 Ired., 73, cited and approved).

CIVIL ACTION tried at Fall Term, 1883, of CHOWAN Superior Court, before *Avery, J.*

The plaintiff brings this action against the defendants to recover damages for injuries to himself, his horse and buggy, occasioned by the falling in of a decayed bridge, forming part of a highway across a swamp in the county of Chowan, which the defendants, as the plaintiff alleges, were bound by law to keep in good and reasonable repair, but which they permitted to become ruinous and dangerous.

The defendants insisted by their answer and on the trial in the court below, that they were not civilly liable for the injury thus sustained by the plaintiff. The court held that they were so liable, gave judgment for the plaintiff, and the defendants appealed.

*Messrs. John G. Bunch* and *Pace & Holding*, for plaintiff.
*Mr. W. D. Pruden*, for defendants.

MERRIMON, J.    The question presented for our decision in this case is, are county commissioners, in their corporate capacity, liable for damages sustained by a person passing on a highway in their county, occasioned by a failure of the proper county authorities to keep such highway, and the public bridges along and over the same, in good and safe repair?

The counties of this state, like those of most of the states in the Union, are subdivisions of its territory embracing the people who inhabit the same, created by the sovereign authority, and organized for political and civil purposes.  They are created at the will of the sovereign without any special regard to the solicitation, consent or desire of the people who reside in them.  The leading and principal purpose in establishing them is, to effectuate the political organization and civil administration of the state, in respect to its general purposes and policy which require local direction, supervision and control, such as matters of local finance, education, provisions for the poor, the establishment and maintenance of highways and bridges, and in large measure, the administration of public justice.  It is through them, mainly, that the powers of government reach and operate directly upon the people, and the people direct and control the government. They are indeed a necessary part and parcel of the subordinate instrumentalities employed in carrying out the general policy of the state in the administration of government.  They constitute a distinguishing feature in our free system of government.  It is through them, in large degree, that the people enjoy the benefits arising from local self-government, and foster and perpetuate that spirit of independence and love of liberty that withers and dies under the baneful influence of centralized systems of government.    They contribute largely to the life-principle of American liberty, and are, in a very large sense, governmental in their nature and their purposes, and to this end are invested with appropriate corporate functions.  These functions are not always the same; they may be enlarged, abridged or modified at the will of the legislature, but, generally, they are intended only to be essential aids and political agencies in the administration of the government of the state, and exercise their powers for that purpose.  They are not in the strict legal sense municipal corporations: they are sometimes called *quasi* corporations, and this designation distinguishes them on the one hand from private corporations aggregate, and on the other from municipal corpo-

rations proper, such as cities and towns, organized under charters and special statutes, and invested with more and special powers, and endowed with more of the functions of corporate life. *Mills* v. *Williams*, 11 Ired., 558; *Caldwell* v. *Justices of Burke*, 4 Jones' Eq., 323; Dill. on Corp., §§9, 10; Cooley on Const. Lim., 240.

Such being the general purpose of counties and county government, they are not ordinarily liable to be sued civilly for the manner in which they exercise, or fail to exercise, their corporate powers. They may be sued only in such cases and for such causes as may be provided for and allowed by the statute. And, although a county may have power to establish public roads and bridges, and to levy taxes and raise money to construct and keep them in repair, it is not liable to a party sustaining damage by reason of its failure to exercise such powers, unless such liability be expressly declared by statute, or by implication necessarily arising therefrom. These views are fully sustained by the great weight of authority. Dill. on Corp., §§761, 762, 763, 785; Whar. on Neg.; Cooley on Const. Lim., 247.

In *Kinsey* v. *Magistrates of Jones*, 8 Jones, 186, this court held that the justices of the peace of that county were not liable to the owner of property for injuries to it, occasioned by defects in public bridges under their control. In that case, the late Judge MANLY said: "The justices cannot be held responsible, either in criminal prosecutions or civil actions, for deficiencies in the public highways and bridges. They are charged with certain duties in respect to them, but when these are performed their office ceases, and the overseers and contractors are responsible to the county and to citizens. That they are not criminally responsible, except for the non-performance of the specific duties assigned them by law, is decided by the case of *State* v. *Justices of Lenoir*, 4 Hawks, 194; and that they are not responsible at all in civil actions to the citizens of the country, is also settled by authority and the uniform practice of the state."

This decision and all similar decisions rest upon the ground

that counties are political agencies and organizations intended to aid in the general administration of the state government, in respect to matters local in their nature, and requiring local supervision and control.

There can be no question that it is within the power of the legislature to provide and declare by statute that the several counties shall be liable for damages occasioned by their failure to keep the roads and bridges in proper and safe repair, and in some states such liability has been created, but there is no such statutory provision in this state. While the powers of the county governments have in some respect been greatly enlarged, there is no statute which provides, either expressly or by reasonable implication, that the several counties of the state shall be liable civilly for injuries to persons or property occasioned by the failure of the proper county authorities to keep the highways and bridges in proper repair. No such provision was brought to our attention on the argument, and we have been unable by assiduous search to find any. The Code, §2033, makes the overseer of the road liable to a penalty, and likewise for such damages as may be sustained by reason of his failure to discharge his duty as required by law. The county authorities may be indicted for failure to exercise their powers as the statute provides, but they are not liable civilly, certainly, in their corporate capacity.

There is a well settled distinction in respect to the liability of a county as distinguished from that of a city or town, for failure to discharge corporate duties. The latter are liable generally when specific duties are imposed for damages occasioned by a failure to discharge such duties, and to exercise corporate powers conferred to that end; but this goes upon the ground that corporate powers are granted specially to the citizens of the city or town at their solicitation and for their special benefit and advantage, in many respects. The corporate powers are in some respects larger and more specific than those conferred upon counties; and they are conferred, not so much to aid in the administration of the government of the state as for local advan-

tage and convenience.   *Meares* v. *Wilmington*, 9 Ired., 73; Dill. on Corp., §§10a, 753, 785.

The court erred in holding, upon the findings of the jury upon the issues submitted and the facts admitted in the pleadings, that the defendants were liable in this action for the injuries sustained by the plaintiff, and giving judgment accordingly; and for such error the judgment must be reversed, and judgment entered in this court for the defendants.   Judgment accordingly.

Error.   .                                       Reversed.