In 1880 Sauratown and Meadows townships in Stokes County, under the authority of chapter 67, Laws 1879, voted to subscribe $6,660.66 each to the capital stock of the Cape Fear and Yadkin Valley railroad Company to procure said railroad to be built through their respective townships, and to levy a tax on said townships to pay the subscription, which has since been fully paid up. The road was built through said townships and has since become the property of the Southern Railway Company. Meadows Township has been divided into two townships, Meadows and Danbury.
In 1887 said Sauratown Township, Stokes County, under the authority of chapter 87, Laws 1887, voted to subscribe $10,000 to the capital stock of the Roanoke and Southern Railroad Company (61) to procure said railroad to be built through the township, and to issue $10,000 in bonds, to be sold to pay up said subscription, which was done, and subsequently the township paid off and canceled said bonds. The road was built through said township and has since become the property of the Norfolk and Western Railroad Company.
In 1893 the General Assembly enacted chapter 448, Laws 1893, which as amended by chapter 131, Laws of 1895, reads as follows:
"SECTION 1. The Commissioners of Stokes County are hereby authorized and directed to set apart from all other county taxes all the taxes paid each year as county taxes by the Cape Fear and Yadkin Valley Railroad Company on their property, lying and being in Sauratown and Meadows townships of said county of Stokes; and the same so respectively paid each year on the property in each of said townships by said railroad company shall be divided into two equal *Page 74 
shares, one-half thereof to belong to Sauratown Township and the other half to belong to the territory now embraced in Meadows and Danbury townships, to be divided between said Meadows and Danbury townships in proportion to the amount of taxes paid by said territory now embraced in Danbury and Meadows townships, respectively, to the Cape Fear and Yadkin Valley Railroad Company, and shall be expended exclusively within the said Sauratown and Meadows and Danbury townships, respectively, for repairing the public roads, building bridges, extending schools, or such other purposes as the Commissioners may deem best, and not otherwise.
"SEC. 2. The Commissioners of Stokes County are authorized and directed to invest each year in interest-bearing securities, which in their judgment are safe and reliable, the surplus money arising from the county taxes paid by the Norfolk and Western Railroad Company, over and above the amount required to pay interest on the bonds (62) issued by Sauratown Township in aid of said railroad, on all their property lying and being in Sauratown Township, in said county of Stokes, the interest on the bonds outstanding first having been paid each year before said surplus is invested; and the surplus so invested shall be a sinking fund for the redemption of the bonds at maturity, it being the intention of this act that the surplus shall not be used by the county as a part of the general county fund, but for the purpose herein set forth.
"SEC. 3. That whenever the bonded debt, principal and interest, of said township, contracted in aid of the Roanoke and Southern, now the Norfolk and Western Railroad, shall have been paid by said county taxes on said road, and the said township fully reimbursed for what has been already paid, and whenever the Meadows Township shall be fully reimbursed and said taxes, principal and interest, the amount paid by said township, then this act shall cease to be operative, and all such taxes shall be paid into the general county fund.
This is an action brought by these tax-payers of the aforesaid townships, on behalf of all the tax-payers therein, averring that the defendant Board of County Commissioners of Stokes has never complied with the requirements of the aforesaid acts, but has collected the taxes on said railroad property in said townships, and has applied them to general county purposes, and though a demand was made on the board, before bringing this action, that it should apply the aforesaid taxes to the purposes set out and required by said acts, the defendant refused to do so. The relief sought is a mandamus to compel the defendant to comply with the statute by applying the taxes raised on said railroad property in the townships named, as follows: "That the taxes levied on the property, formerly owned by the Cape Fear and Yadkin Valley Railroad *Page 75 
Company, be applied to repairing the public roads in said townships and for the other purposes set out in said act, and that the taxes levied on the property owned by the Norfolk and Western Railway Company be paid to said Sauratown Township until (63) said township is reimbursed in both the principal and the interest paid on said bonded indebtedness of $10,000," and for a reference to ascertain the sum that should be so applied. His Honor granted judgment as asked in favor of the plaintiffs as to the taxes hereafter to be collected on the Southern Railway in said Township, that the same shall be applied as provided in section 1 of the act in the manner and to the extent therein mentioned, and for a reference to ascertain the amount. From this order the defendant appealed.
It was further adjudged that Sauratown Township is not entitled to be reimbursed in any amount for the sums paid out on the subscription for building the Roanoke and Southern Railroad, and from this order the plaintiff appealed.
DEFENDANT'S APPEAL.
The townships named in the act having, by the extra taxation they had imposed upon themselves, procured the building through their territory of the Cape Fear and Yadkin Valley Railroad, now the property of the Southern Railway Company, the General Assembly thought it just and equitable that the county taxes derived from such property in those townships should be expended exclusively in said townships "in repairing roads, building bridges, extending schools or such other purposes as the Commissioners may deem best," until the amount so used in said townships should fully reimburse them for the amount paid out on subscriptions to aid in building said railroad. We know of no provision in the Constitution which disables the Legislature from passing such act. (64)
The defendant contends that the act interferes with the requirement of uniformity and equality of taxation. But there is no constitutional requirement that the tax rate for county purposes shall be the same everywhere. It varies in the different counties. The rate of taxation may vary in different townships, parts of townships, districts, towns and cities in the same county, as where some have voted extra taxation for roads, fences, schools, etc., and in this very instance the taxes were higher a few years ago in those three townships, by reason *Page 76 
of the tax to pay their railroad subscription — an inequality for which this act seeks to reimburse them. In fact, the levy for county taxation is uniform throughout the county under this act, which is merely a legislative requirement of the appropriation of money raised from certain property taxes, in those townships, to certain public purposes therein, which the General Assembly thought just and proper. The act does not interfere with the constitutional provision appropriating the poll tax and fines, forfeitures and penalties. The defendant suggests, however, that it infringes upon the provisions of the Constitution "establishing counties and requiring them to be maintained in their integrity." But we do not find any such provisions. The Constitution recognizes the existence of counties, townships, cities and towns as governmental agencies (White v.Commissioners, 90 N.C. 437), but they are all legislative creations and subject to be changed (Dare v. Currituck, 95 N.C. 189; Harris v. Wright,121 N.C. 172), abolished (Mills v. Williams, 33 N.C. 558), or divided (McCormac v. Commissioners, 90 N.C. 441) at the will of the General Assembly. In Tate v. Commissioners, 122 N.C. 813, it is mentioned that the names of fourteen counties, formerly existing, have disappeared from the map of the State. Another (Polk) was once abolished and subsequently recreated.
A case exactly in point with this is Clark v. Sheldon, 106 N.Y. 104, which held constitutional an act "directing and providing for the (65) application of taxes assessed upon any railroad in a town, city or village towards the redemption of bonds issued by the municipality to aid in the construction of such railroad," and pointed out that this did not impose a tax upon property in other portions of the county for the benefit of any township, city or town, but simply appropriated the taxation upon such railroad property for the benefit of the municipality which had incurred a burden to procure the building of such railroad. The same view is upheld in Commissioners v. Lucas,93 U.S. 108.
It rested in the judgment of the General Assembly to direct the Commissioners of Stokes County to make this application of the county taxes derived from railroad property in those townships. Should this statute not meet the approval of subsequent Legislatures it can be repealed, but unless repealed it is the duty of the County Commissioners to obey it until, as provided therein, the townships named in section 1 shall be reimbursed in the manner stated.
It was competent for these plaintiffs, taxpayers in said township, to bring this action, "the question being one of common or general interest" to all the taxpayers therein. Revisal, 411; Bronson v. Ins. Co.,85 N.C. 411; Thames v. Jordan, 97 N.C. 121; McMillan v. Reeves,102 N.C. 550. *Page 77 
Nor is there any statute of limitations. The plaintiff is not seeking to recover a debt, nor even to compel the County Commissioners to account for the taxes heretofore collected on railroad property in said townships, but the relief sought is prospective, to require compliance with the statute in future. It imposes a continuing duty until it shall be complied with or repealed.
No Error.
PLAINTIFF'S APPEAL.