BOARD OF TRUSTEES OF YOUNGSVILLE TOWNSHIP *v.* WEBB.

(Filed 31 May, 1911.)

1. Counties and Towns—Governmental Agencies—Legislative Control—Constitutional Law.

Counties and townships are as a rule simply agencies of the State constituted for the convenience of local administration in certain portions of the State's territory, and in the exercise of ordinary governmental functions they are subject to almost unlimited legislative control, except when restricted by constitutional provision.

2. Same—Public Quasi Corporations.

Under our Constitution, the Legislature is given power to create special public *quasi* corporations for governmental purposes in certain designated portions of the State's territory subject to like control, and in the exercise of such power county and township lines may be disregarded.

3. Same—Road Districts.

Under this power the Legislature may create special road districts and confer upon the trustees or authorities thereof the regulation, management and ordinary control of the public roads in such district, and may further create in a given district a special road commission and authorize the commissioners to levy a tax for the purpose of maintaining and extending the roads of the district.

**4. Same—Taxation—Vote of the People.**

The construction and maintenance of public roads is a governmental purpose, and the cost thereof is a necessary expense which may be paid for by current taxation or issuing bonds, having regard, always, to the requirements, limitations and purpose of the legislation under which these local authorities are acting, and, unless the statute so requires, no election by the people is necessary.

**5. Same.**

When the Legislature has created a municipal corporation to be known as the board of trustees of a certain township, and has given them as such the entire management and control of the public roads of the township, and has conferred upon them power to issue and sell bonds, without requiring their issuance to be submitted to a vote of the people therein, and apply the proceeds to the purpose designated, such bonds so issued are valid.

APPEAL from *Webb, J.,* at the May Term, 1911, of BUN-COMBE.

Controversy, submitted without action, under section 803, Revisal, and heard before his Honor, *J. L. Webb, Judge,* in May, 1911, when and where it was properly made to appear that, on the .... day of March, 1911, the defendants contracted with the plaintiff for the purchase of $10,000 of Youngsville Township road bonds, to be issued under the authority of an act of the General Assembly of 1911, entitled "An act to provide good roads in Youngsville Township, Franklin County," which said act was read three several times, and the yeas and nays on the second and third readings duly entered on the journals of each House of the General Assembly, and was ratified on 24 January, 1911; said bonds were to be dated 1 April, 1911, to mature 1 April, 1941, and were to bear 6 per cent interest, payable semiannually; and for them the defendant agreed to pay par and accrued interest; but this agreement of purchase was made subject to the legality of the issue. The proceeds from the sale of the bonds were to be used solely for the construction and maintenance of public roads in said Youngsville Township. The plaintiff board of road trustees offered to deliver said bonds issued in accordance with the terms of the contract of sale and of the act authorizing same,

BOARD OF TRUSTEES v. WEBB.

and in prospect of such sale have incurred debts and entered into obligations for the working of the roads of said township; but the defendants now decline and refuse to accept said bonds and to pay for same, on the ground that they are invalid and not a legal liability of said Youngsville Township, for that the question of their issue was not submitted to and ratified by a vote of a majority of the qualified voters in the township. Omitting the parts of the said act, "To provide good roads in Youngsville Township," giving the detailed instructions for the working of the roads, the sections of said acts material to this controversy are as follows: "Whereas, under the provisions of chapter 234, Public Laws of 1909, an election was duly held and carried in Youngsville Township, Franklin County, on 11 May, 1910, for building good roads, and the levy of a tax of 30 cents on the $100 worth of property and of 90 cents on the poll in said township; and whereas, at a mass-meeting of the citizens of said township, held prior to said election, the provisions of this bill were discussed and unanimously indorsed:

*"The General Assembly of North Carolina do enact:*

"SECTION 1. That R. C. Underwood, C. C. Winston, J. F. Mitchell, L. C. Mitchiner, G. C. Paterson, J. C. Winston, C. W. Roberts, D. W. Spivey, and C. A. Garner are hereby appointed a board of trustees for the public roads of Youngsville Township in Franklin County. The first three shall hold the said position of trustees for six years, the next three for four years, and the last three for two years. At the expiration of the terms of any, their successors shall be elected for six years by the County Board of Commissioners of Franklin County.

"SEC. 2. That the said board of trustees and their successors shall be and are hereby constituted a body corporate by the name and style of 'The Board of Road Trustees of Youngsville Township,' and by that name may sue and be sued, make contracts . . . and exercise such other rights and privileges as are incident to other municipal corporations.

"SEC. 3. That it shall be the duty of said board of trustees to take the control and management of the roads of said Youngsville Township, and said trustees are hereby vested with all the rights and powers for such control and management as

are now vested in and exercised by the Board of County Commissioners of Franklin County and the Road Supervisors of Youngsville Township.

"SEC. 9. That the said board of trustees shall be and are hereby authorized and empowered to issue bonds of said Youngsville Township, to be styled 'Youngsville Township Road Bonds,' to an amount not to exceed $25,000, of such denominations and of such proportions as said board may deem advisable, bearing interest from the date of issue thereof at a rate not exceeding 6 per cent per annum with interest coupons attached, payable annually or semiannually as may be deemed best, . . . and the principal thereof payable or redeemable at such time or times, not exceeding forty years from date thereof; and the said bonds may be issued at such time or times and in such amount or amounts as may be deemed best to meet the expenditures provided for in this act. The liability for the payment of such bonds shall be attached to and imposed upon the political division of Franklin County known as Youngsville Township as constituted at the time of the ratification of this act.

"SEC. 10. That for the purpose of providing for the payment of said bonds and the interest thereon and for the construction, improvement, and maintenance of the roads of said township, the Board of County Commissioners shall annually and at the time of levying the county taxes levy and lay a special tax on all persons and property subject to taxation within the limits of said Youngsville Township of not less than 15 cents and not more than 30 cents on the $100 assessed valuation of property and not less than 45 cents and not more than 90 cents on each taxable poll.

"SEC. 11. That all funds derived from the sale of any bonds shall be used for the purpose of constructing and improving the public roads in said township, the purchase of such material, machinery, and implements and the employment of such officers and labor as may be found necessary in the carrying out of this work.

"SEC. 16. That this act shall be in force from and after its ratification."

The plaintiff contends that, under the act of the Legislature, Youngsville Township is a municipal corporation; that maintaining the public roads is one of the necessary expenses of such corporation, and that no vote is necessary for the validity of the bonds issued for that purpose, and asks for judgment against the defendants.

The defendants contend that a vote for such an issue by a majority of the qualified voters was necessary, and ask to go without day.

Upon these facts the court entered judgment as follows:

"This cause coming on to be heard upon the statement of facts agreed upon, and the court having considered the matter, after hearing arguments on both sides, the court is of opinion that the bonds referred to in said statement of facts are invalid, for the reason that said bonds were not authorized by a majority of the qualified voters of said township at an election called and held for the purpose of obtaining their consent thereto. It is therefore considered, ordered, and adjudged that said bonds are invalid and void, and that the plaintiff have and recover nothing of the defendant, and that they pay the costs of this action.　　　　　　　　　　JAS. L. WEBB,

*"Judge Superior Court."*

From said judgment plaintiff excepted and appealed.

*Bickett & White for plaintiff.*
*No counsel contra.*

HOKE, J. The provisions of our Constitution applicable to the question presented and authoritative decisions construing statutes of similar import are against the ruling of the lower court by which these bonds were declared invalid. Thus in *Jones v. Commissioners of Madison County,* 137 N. C., pp. 579-596, speaking to the action of counties in matters governmental and the power of the Legislature over them in this respect, the Court said: "In the exercise of ordinary governmental functions they are simply agencies of the State constituted for the convenience of local administration in certain portions of the State's territory, and in the exercise of such func-

tions they are subject to almost unlimited legislative control except when restricted by constitutional provisions."

Citing *Hamilton v. Miguels,* 7 Ohio St., 109; 1 Dillon on Mun. Cor., sec. 23; Smith's Law of Municipal Corporations, vol. 1, sec. 10; *People v. Flagg,* 46 N. Y., 401; *Galveston v. Pomanski,* 62 Texas, 118; *Phil. v. Fox,* 64. Pa., 160; *Locomotive Co. v. Emigrant Co.,* 164 U. S., 559-596, and authorities from our own Court: *Tate v. Commissioners,* 122 N. C., 812; *White v. Commissioners,* 90 N. C., 437; *Mills v. Williams,* 33 N. C., 558, and many others could be cited, notably with us *McCormac v. Commissioners,* 90 N. C., 441. On this subject in *Mills v. Williams* it was held: "The Legislature has the constitutional power to repeal an act establishing a county. It has the same power to consolidate, as to divide, counties, the exercise of the power in both cases being upon considerations of public expediency. The purpose of making all corporations is the public good. The only substantial difference between corporations is that in some cases they are erected by the *mere will* of the Legislature, there being *no other party interested or concerned,* and these are subject at all times to be modified, changed or annulled." And in *Locomotive Works v. Emigrant Co., supra,* the position is referred to in this way: "The county of Calhoun is a mere political subdivision of the State, created for the State's convenience to aid in carrying out within a limited territory the policy of the State. Its local government contains no will contrary to the will of the State, and it is subject to the paramount authority of the State as well in respect to its acts as of its property and revenue held for public purposes. The State made it and could, in its discretion, unmake it and administer such property and revenue through other instrumentalities." In *McCormac's case, supra,* Merrimon, J., for the Court said: "That it is within the power and is the province of the Legislature to subdivide the territory of the State and invest the inhabitants of such subdivisions with the corporate functions, more or less extensive and varied in their character, for the purpose of government, is too well settled to admit of any serious question. Indeed, it seems to be a fundamental feature of our system of free govern-

BOARD OF TRUSTEES *v.* WEBB.

ment that such a power is inherent in the legislative branch of the Government, limited and regulated, as it may be, only by the organic law. The Constitution of the State was formed in view of this and like fundamental principles. They permeate its provisions, and all statutory enactments should be interpreted in the light of them, when they apply. It is in the exercise of such power that the Legislature alone can create, directly or indirectly, counties, townships, school' districts, road districts and like subdivisions, and invest them, and agencies in them, with powers, corporate or otherwise in their nature, to effectuate the purposes of the Government, whether these be local or general, or both. Such organizations are intended to be instrumentalities and agencies employed to aid in the administration of the Government, and are always under the control of the power that created them, unless the same shall be restricted by some constitutional limitation." The same principle has been applied and upheld with us in reference to townships. *Jones v. Commissioners of Stokes County,* 143 N. C., 59; *Jones v. Commissioners of Person County,* 107 N. C., 248; *Brown v. Commissioners of Hertford County,* 100 N. C., 92. In *Jones v. Commissioners of Stokes County, supra,* the present *Chief Justice,* speaking to the subject, said: "The defendant suggests, however, that it infringes upon the provisions of the Constitution establishing counties and requiring them to be maintained in their integrity. But we do not find any such provisions. The Constitution recognizes the existence of counties, townships, cities, and towns as governmental agencies *(White v. Commissioners,* 90 N. C., 437), but they are all legislative creations and subject to be changed *(Dare v. Currituck,* 95 N. C., 189; *Harriss v. Wright,* 121 N. C., 178), abolished *(Mills v. Williams,* 33 N. C., 558), or divided *(Mccormac v. Commissioners,* 90 N. C., 441) at the will of the General Assembly."

Again, in *Smith v. School Trustees,* 141 N. C., 143, the Legislature incorporated a school district, confined territorially to portions of two existent townships, authorized the trustees of the district to issue bonds, levy and collect taxes, etc.,

and the Court after full and careful consideration held that this power of the Legislature over counties, townships, etc., when acting as governmental agencies, was not confined to the ordinary political subdivisions of the State, but that it authorized and extended to creating special public *quasi* corporations for governmental purposes in designated portions of the State's territory, and that in the exercise of such power, county and township lines could both be disregarded if such action was, in the judgment and expressed declaration of the Legislature, best promotive of the public .welfare. And within the proper exercise of this power were included levee, school, drainage, road and highway and other special taxing districts. Citing among other authorities, American and English Enc. of Law, p. 906, as follows:

"Districts for schools, highways, levee, irrigation, drainage and other similar purposes may be and often are invested by the State with a corporate character and may be endowed with the taxing power. These are *quasi* corporations, mere subdivisions of the State for political purposes." And Desty on Taxation, vol. 1, p. 226, has the following: "As distinct from its power of local assessment, the Legislature may create special taxing districts which may include all or mere subdivisions of the State or parts of subdivisions. It is not essential that such districts shall correspond with the territorial limits of such subdivisions. So it may create levee, school, swamp land, road highway . and other taxing districts"—an extension of the principle affirmed and applied to school districts in *McCormac's case, supra;* and to drainage districts, *Sanderlin v. Luken,* 152 N. C., 738; and to highways in townships, *Highway Commissioners v. Webb,* 152 N. C., 710. In this case of *Smith v. School Trustees, supra,* it was held, also, that when these special districts were incorporated for governmental purposes, they came within the limitations and restrictions as to the methods, purposes, and powers of taxation contained in Article VII, secs. 7, 9, 13. Section 7 being the prohibition against "contracting debts, loaning credits, or levying taxes except for necessary expenses, unless by a vote of the majority of the qualified voters therein." Section 9 requiring that all taxation shall be uniform

BOARD OF TRUSTEES v. WEBB.

and *ad valorem.* Section 13 prohibiting the payments of debts contracted in support of the Confederate Government. And with the exception of these sections above noted, there was not only no further restraint on the power of the Legislature contained in the Constitution, but under section 14 of the same article express provision was made for its fullest exercise. And speaking further to the question, the Court said: "The language of section 14 is very broad in its scope and terms, and the Supreme Court in construing the section has decided that it is not necessary to effect changes in municipal government that an act for the purpose should be general in its operation or that it should, in terms, abrogate one article and substitute another in its stead; but that an act of the General Assembly making such change, and local in its operations, must be given effect under this amendment, if otherwise valid. After declaring this as a principle of construction, the Court, in *Harriss v. Wright,* 121 N. C., 179, further holds as follows: "In 1875 a constitutional convention amended Article VII in these words: 'The General Assembly shall have the full power by statute to modify, change, or abrogate any and all the provisions of this article and substitute others in their place, except sections 7, 9, 13.' Thus was placed at the will and discretion of the Assembly the political branch of the State Government, the election of court officers, the duty of county commissioners, the division of counties into districts, the corporate power of districts and townships, the election of township officers, the assessment of taxable property, the drawing of money from the county or township treasury, the entry of officers on duty, the appointment of justices of the peace, and all charters, ordinances and provisions relating to municipal corporations. Our Constitution, therefore, so far from restricting the power of the General Assembly on the matter now before us, has conferred upon that body full and ample power to establish any form of municipal government which the public interests and special needs of a given community may require." And it is no objection to this legislation that the issuing of the bonds and the control and ordering of the road work are given to the local authorities, while the county commissioners are directed

BOARD OF TRUSTEES *v.* WEBB.

to levy and collect the taxes. This is the plan contained in our general statute in reference to school districts—adopted, no doubt, for convenience and to avoid possible friction between different sets of officers and unnecessary harassment of the citizens in the collection of taxes. As declared, however, in *Perry v. School Commissioners,* 148 N. C., 526: "Whether the collection of this tax was done by specified local agencies or by the general authorities of the county, this was only an immaterial matter, a question of method simply, which was not of the substance and should in no way affect the result."

The power of the Legislature, then, over these local agencies, when acting in matters governmental, being ample, certainly when given territorial placing and whether designated as counties, townships, or as special districts, it is well established with us that the construction and maintenance of public roads is a governmental purpose, and the cost thereof is a necessary expense to be paid for by current taxation or by issuing bonds, having regard always to the requirements and limitations of the legislation under which these local authorities are acting, and for such purpose, and unless the statute so requires, no election by the people is necessary. Within the range of governmental action there could not be a more beneficent purpose or a more compelling need, and numerous and repeated decisions of our Court are in furtherance of the enlightened policy of which this statute is an expression. *Highway Commissioners v. Webb,* 152 N. C., 710; *Ellison v. Williamston,* 152 N. C., 147; *Jones v. New Bern,* 152 N. C., 64; *Hendersonville v. Jordan,* 150 N. C., 35; *Commissioners v. McDonald,* 148 N. C., 129; *Crocker v. Moore,* 140 N. C., 429; *Herring v. Dixon,* 122 N. C., 420; *Tate v. Commissioners,* 122 N. C., 812.

Speaking to this subject in his learned and able argument counsel for the plaintiff well said: "To-day, when the industrial activities of men have multiplied, when specialization is the order of the hour, and every man is to some extent dependent upon the products and the purse of his fellowman, when the social instinct has become a habit and demands a larger field than the neighborhood, the need for roads has become a necessity both to the commercial and social life of our

people. Without them the State cannot maintain effective order nor administer adequate justice. In equal measure, they are dependent upon the power of the State. They cannot be constructed without the right of eminent domain, nor maintained save by a community of interests made stable by legislative enactment."

The statute in question expressly creates the. municipal corporation to be known as the Board of Trustees of Youngsville Township; gives them as such the entire management and control of the *public* roads of the township; confers upon them the power to issue and sell the bonds and apply the proceeds to the purpose designated. On authority, therefore, we are of opinion that the bonds are valid and that no good reason is shown why performance of the contract of sale should not be enforced.

For the reasons stated, the judgment of the lower court must be reversed, and it is so ordered.

Judgment reversed.