STACY, C. J., dissents.
This is an application for writ of mandamus, under C. S., 866, brought by plaintiffs against defendant Fred C. Sink, sheriff of Davidson County.
The court below found the following allegations in the complaint to be true:
"1. That C. H. B. Leonard is the duly elected county manager and county accountant for Davidson County with such powers and duties as are prescribed for county managers as set forth in chapter 91 of the Public Laws of North Carolina of 1927.
2. That C. M. Hoover is chairman, L. W. DeLapp, C. A. Hoover, M. R. Harris and R. S. Owen are the duly elected board of commissioners of Davidson County, and as such has the powers and duties as conferred upon county commissioners as set forth in Article 2, chapter 24 of the Consolidated Statutes of North Carolina.
3. That Fred C. Sink is the duly elected sheriff of Davidson County and as such has the duty of collecting the taxes and paying the same to the county treasurer.
4. That under chapter 246 of the Public-Local Laws of North Carolina of 1919 the sheriff of Davidson County was required under section 1 to perform certain duties, which section is in words and figures as follows: `Section 1. That the sheriff of Davidson County shall turn over and pay to the governing bodies of any incorporated cities or towns in Davidson County fifty per cent of all taxes levied and collected for road purposes from the property and polls within such incorporated cities and towns respectively.' That under and by virtue of said act, among other things it was directed that the amount so collected should be paid to the treasurer of the said incorporated cities and towns in Davidson County.
5. That Public-Local Laws of North Carolina of 1925, chapter 299, was duly passed by said Legislature, and among other things and specifically section 6 of said act provides in words and figures as follows: `Sec. 6. That all sums of money paid to the board of county commissioners *Page 116 
by the board of road commissioners on and after 31 March, 1925, and all taxes and all other funds applicable to the road fund of Davidson County that may be collected in the future, shall be deposited with the county treasurer, which fund shall be handled in the same manner and form provided for other county funds: Provided, that all funds collected for road purposes shall be kept separate and apart from the county funds.' That section 7 of said act provides in part that the said board of county commissioners shall use the funds arising from taxation and from every source to construct, improve and maintain the public highways of said county.
That the entire chapter 299 of the Public-Local Laws of North Carolina of 1925 is hereby pleaded in this action in as full and ample manner as if the same were written herein.
6. That on 21 March, 1929, C. H. B. Leonard, county manager and county accountant, under and by virtue of his duties as set forth in chapter 91 of the Public Laws of North Carolina of 1927, and for the county commissioners of Davidson County, addressed the following letter to Fred C. Sink, sheriff of Davidson County:
`MR. FRED C. SINK, Sheriff of Davidson County, Lexington, N.C.
SIR: Please advise me whether or not you are going to continue to pay into the county treasury, as you have been doing, all the funds collected for road purposes in this county.
Yours very truly,
 C. H. B. LEONARD, County Manager and County Accountant.'
That on the same day as above set forth, C. H. B. Leonard, as county manager and county accountant, received the following reply from Fred C. Sink, sheriff of Davidson County:
`MR. C. H. B. LEONARD, County Manager and Accountant.
DEAR SIR: Replying to the above, beg to advise that I am not going to continue to pay all funds collected for road purposes into the county treasury.
 Yours very truly, FRED C. SINK, Sheriff.'"
The court below further found: "That the defendant Fred C. Sink, sheriff of Davidson County, as admitted in the answers, is now keeping in his possession 50% of the said road funds collected in the said cities and towns for the use and benefit of said cities and towns respectively, *Page 117 
and to be paid over to their respective treasurers, and has refused to pay the same over to the treasurer of Davidson County as provided in chapter 299, Public-Local Laws of North Carolina, 1925."
The court below rendered the following judgment: "It is hereby ordered, adjudged and decreed that the defendant, Fred C. Sink, sheriff of Davidson County, be and he is hereby ordered and directed by this court to pay and turn over to the treasurer of Davidson County all taxes and funds applicable and belonging to the road funds of Davidson County, which he has collected or may in the future collect, and specifically including any and all taxes and funds in dispute in this action, and that the plaintiff recover their costs expended in this action to be taxed by the clerk."
The city of Lexington, city of Thomasville and town of Denton have not received 50% of the tax collected out of their respective municipalities for street improvement, and were made parties to the action.
The defendants excepted, assigned error and appealed to the Supreme Court.
For a decision of this controversy, we have to consider the local road law applicable to Davidson County:
(1) The first local law of county-wide application is chapter 334, Public-Local Laws, 1915. This act created "The Board of Road Commissioners of Davidson County," and invested it with all the powers, rights and authority which was theretofore exercised and vested in the board of county commissioners of Davidson County. A general supervision and control was given the road commissioners to construct, repair and maintain the roads of the county. Authority was given to issue $300,000 of bonds. The act was a comprehensive system to construct, improve and maintain the roads of the county and a tax for this purpose to be levied each year of not more than 30 cents on the $100 valuation of real and personal property and not exceeding 90 cents on the poll, and a treasurer was to be designated by the act to handle the road funds. Under section 19 of this act, provision is made to distribute the work of improving and constructing the highways of the county in each township as equitably as practicable, having due regard to taxable property in each township. In section 24 it is provided that the road taxes shall be expended in such a way and at such times according to the needs of the roads in each township. This law was amended and additional power given, and the act made more complete, chapter 50, Public-Local Laws, 1917. Then again, Public-Local Laws, 1917, ch. 129, sec. 4, reads: *Page 118 
"That the board of road commissioners may work any necessary road through any incorporated towns of the county necessary to connect the main highways in the county," etc.
Chapter 233, Public-Local Laws 1919, part section 1, "And in addition to the taxes now authorized to be levied under existing laws," increased the tax 30 cents, making 60 cents on the $100 valuation, $1.80 on poll.
Chapter 246, Public-Local Laws, 1919, sec. 1: "That the sheriff of Davidson shall turn over, and pay to the governing boards of any incorporated cities or towns in Davidson County fifty per cent (50%) of all taxes levied and collected for road purposes from the property and polls within such incorporated cities or towns respectively.
Sec. 2. That the amounts so collected and paid to the governing boards of such cities and towns shall be paid to the treasurer of the same, and shall be a separate fund to be used for building and improving and maintaining the streets, of such towns and cities, or at the discretion of the governing bodies, every such cities and towns to pay interest of bonds issued for permanent streets of said cities and towns respectively.
Sec. 3. That the board of road commissioners of Davidson County shall not have authority or power to expend any further portion of the road funds of the county for work in said cities or towns."
Chapter 117, Public-Local Laws, 1923, provides that the tax to be levied shall not exceed 35 cents on the $100 valuation of taxable property. The tax was reduced from 60 cents to 35 cents.
Chapter 299, Public-Local Laws, 1925, the caption is as follows: "An act to provide for the construction and maintenance of roads and bridges in Davidson County." Sec. 2. "That it shall be the duty of the said board to take charge of the working, maintaining, altering and constructing of any and all roads and bridges in Davidson County now maintained by the county as public roads, and it is hereby vested with all powers, rights and authority now vested in the board of road commissioners of Davidson County for the general supervision of roads of said county and for the construction and repairing thereof." Sec. 6. "That all sums of money paid to the board of county commissioners by the board of road commissioners on and after the thirty-first day of March, one thousand nine hundred and twenty-five, and all taxes and all other funds applicable to the road fundsof Davidson County, that may be collected in the future, shall be depositedwith the county treasurer, which fund shall be handled in the same manner and form provided for other county funds: Provided, that all funds collected for road purposes shall be kept separate and apart from other county funds." Sec. 23. "That all laws and clauses of laws in conflict with this act are hereby repealed." *Page 119 
The first question involved in this controversy: Are the provisions of chapter 246 of the Public-Local Laws of 1919 in direct and irreconcilable conflict with the provisions of chapter 299, Public-Local Laws of 1925? We think not.
In 25 R. C. L. (statutes), part sec. 169, p. 918-19, we find the following: "Repeals by implication are not favored, and will not be indulged if there is any other reasonable construction. The presumption is always against the intention to repeal where express terms are not used, and the implication, in order to be operative, must be necessary. A law is not repealed by a later enactment, if the provisions of the two laws are not irreconcilable nor necessarily inconsistent, but both may stand and be operative without repugnance to each other. Nor can one act be allowed to defeat another if, by a fair and reasonable construction, the two can be made to stand together. Although two acts are seemingly contradictory or repugnant, they are, if possible by a fair and reasonable interpretation, to be given such a construction that both may have effect. If a later act not repugnant to the earlier and containing no negative words is not clearly intended to cover the whole ground of the earlier, there is no implied repeal." S. v. Perkins, 141 N.C. 797; S. v. Foster, 185 N.C. at p. 677; Car. Discount Corp. v. Landis Motor Co., 190 N.C. 157; City ofGreensboro v. Guilford County, 191 N.C. 584; Litchfield v. Roper,192 N.C. 202; Winston-Salem v. Ashby, 194 N.C. 388;Lumber Co. v. Welch, 197 N.C. 249; 25 R. C. L., sec. 173 (statutes), p. 923.
It is said in S. v. Kelly, 186 N.C. 372: "Where two statutes are thus in conflict and cannot reasonably be reconciled, the latter one repeals the one of earlier date to the extent of repugnance. Commissioners v.Henderson, 163 N.C. 120; Commissioners v. Commissioners, 186 N.C. 202. `Between the two acts there must be plain, unavoidable and irreconcilable-repugnance, and even then the old law is repealed by implication only pro tanta to the extent of the repugnancy.' 36 C. L. P., 1074. Every affirmative statute is a repeal by implication of a prior affirmative statute, so far as it is contrary to it, for the maxim is Legesposteriores priores contrareas abrogant (later laws abrogate prior laws that are contrary to them). S. v. Woodside, 31 N.C. 500." Carr v. Little, 188 N.C. at p. 111.
Under the above well settled law in this jurisdiction, as to the interpretation of statutes, it cannot be said that there is a direct, irreconcilable conflict in the acts when construed in pari materia, taking into consideration the intent and object of the acts.
The history of road building in Davidson County in recent years is an interesting one. Great elasticity is given for local self-government in matters of this kind under our Constitution. In Davidson County we *Page 120 
first have a large bond issue of $300,000, in 1915, and a tax of 30 cents on the $100 valuation of property and 90 cents on the poll. The board of county commissioners had theretofore controlled the road system, but to expend so large a sum of money the authority was turned over to the board of road commissioners. Under the act a treasurer was to be designated to handle the road funds. In 1917 this act was amended and further power given, including the power to work the roads of any incorporated town that connects with the main highways of the county. In 1919 the tax was doubled to 60 cents on the $100 valuation of property and $1.80 on the poll.
In 1919 the sheriff, who collected the road tax in the county, and also from the incorporated cities and towns of the county, instead of turning what was collected from the cities and towns over to the treasurer of the board of road commissioners, to be expended by it under the act, turned 50% collected over to the incorporated cities and towns for the purpose of street improvement and maintenance and to pay interest on bonds for permanent streets, and the balance 50% to the board of road commissioners. Under the act the board of road commissioners could spend no more of the county road funds in the cities and towns. In 1923 the road tax was reduced to 35 cents on the $100 valuation of property.
After trying out the board of road commissioners for ten years, in 1925 it was abolished and the road system was put back in the hands of the board of county commissioners. There is nothing in the act of 1925 that by direct language or clear implication repeals the act of 1919, by which the sheriff turned over 50% of the taxes collected by him from the cities and towns back to the cities and towns for street improvement, etc. The tax was collected by the sheriff from these municipalities under the former acts which tax was reduced in 1923 to 35 cents on the $100 valuation of property. Nothing whatever is said in the act of 1925 in regard to any duty of the board of county commissioners, when taking over the road system of the county, in reference to incorporated cities and towns in Davidson County as set forth in other acts when the road system was under the board of road commissioners.
Again, there is no provision in the act of 1925 for the levying of any taxes whatever. The levying of the taxes, the limit upon the levy and the amount to be levied was not affected in any manner by any provision in this act.
We must bear in mind that the sheriff, as he collected the road tax from the cities and towns, under the act of 1919, turned back 50% to the municipalities and the balance over to the board of road commissioners. Then the act of 1925 was passed. Sec. 6, supra, says: "And all taxes andall other funds applicable to the road funds of Davidson County that may becollected in the future shall be deposited with the county treasurer," *Page 121 
etc. All taxes consisted solely of the 35 cents on $100 valuation of property and the poll tax. So all other funds applicable to the road fundsof Davidson County, to give meaning to these words, would indicate that reference was had to those funds collected from the cities and towns in the county. Fifty per cent of these funds came into the hands of the sheriff that he theretofore collected from the cities and towns and paid to the board of road commissioners, and therefore were the other funds applicable to the road funds of Davidson County to be paid to its successor, the board of county commissioners — it by the act becoming the road-governing body of the county, and the act named the county treasurer the depository. The act of 1919 had by clear and explicit language segregated 50% of the tax collected in the municipalities in the county to the needs of its streets and the other 50% was applicable to the road funds of Davidson County for the general road needs of the county. There is no plain, direct or irreconcilable repugnancy in the acts. In so important change, involving the municipalities of the county, it would be a hardship to read into the act of 1925 something that the draftsman could have easily put in it, but did not, and now take this 50% of tax collected from and segregated to the municipalities for street purposes, and put it into the general road fund of the county. In the absence of express words or clear implication, we cannot hold that these segregated funds to the municipalities should go into the general road fund of the county. The main object and intent of the act of 1925 it seems was to get rid of the board of road commissioners and put the county road system back into the hands of the board of county commissioners.
Again, the act of 1919 provides that this segregated fund could be used to pay interest on bonds for permanent street improvements. We do not know from the record if this segregated fund was so used or not, but it is mentioned to indicate how unwise it would be to allow such ambiguous language to repeal a fixed status.
The act of 1925 repeals all laws and clauses of laws in conflict. The acts of 1919 and 1925 can be construed together and reconciled, with no conflict.
The second question involved: Is chapter 246, Public-Local Laws of 1919, unconstitutional? This act permits 50% collected from the municipalities for road purposes to be turned back and segregated for street purposes in the municipalities. We cannot so hold.
The plaintiffs contend that the act is unconstitutional and void. We can see no unreasonableness in the act. The tax is uniform and ad valorem. Const. of N.C. Art. V, sec. 3; Art. VII, sec. 9. The act of 1925 does not change the amount levied, 35 cents on the $100 of property under the 1923 act, 50% collected from the municipalities is segregated under the 1919 act to the municipalities for street purposes, the *Page 122 
balance is put into the general road fund for county road purposes. The tax levied is uniform and ad valorem, and discretionary legislative distribution is reasonable.
It is said in Lassiter v. Commissioners, 188 N.C. at p. 382-3, citing numerous authorities: "These municipal boards, as we have uniformly held, are, in matters governmental, mere agencies of the State for the convenience of local administration in designated portions of the State territory; and in the exercise of their ordinary governmental function they are subject to almost unlimited legislative control, except when restrained by constitutional provisions. Under the Highway Act, it was perfectly competent, therefore, for the Legislature to authorize, as they have done, the acquisition of these roads, and by the same token the county board is allowed to contract with them for its purchase, maintenance and upkeep of these road for which they were then responsible. Granted the power it is fully established that its discretionary exercise is for the commissioners, and the courts are not permitted to interfere unless their action is so unreasonable as to amount to an oppressive and manifest abuse."
In matters of this kind the road-governing bodies, under legislative authority, have exercised discretion and only held for abuse of discretion. They are the creatures of the General Assembly but in the present act the General Assembly, the creator, had itself segregated the fund to the municipalities. It has been often held that an act of the General Assembly will not be held unconstitutional unless clearly so.
In Queen v. Commissioners of Haywood, 193 N.C. at p. 823, we find, "`If there is any reasonable doubt, it will be resolved in favor of the lawful exercise of their powers by the representatives of the people.'Sutton v. Phillips, 116 N.C. at p. 504; Hinton v. State Treasurer, ante, at p. 499." S. v. Revis, 193 N.C. 192; 50 A.L.R., 98; Board ofCommissioners of McDowell County v. Assell, 194 N.C. 412.
In Cabe v. Board of Aldermen, 185 N.C. at p. 160, citing numerous authorities, it is held: "The decisions of this State have repeatedly recognized and approved the principle that counties, townships, and other like municipal corporations, and to a large extent cities and towns, are simply agencies of the State constituted for the convenience of local administration in certain portions of the State's territory, and that in the exercise of ordinary governmental functions they are subject to almost unlimited legislative control, the position extending to the imposition and expenditure of taxes raised for ordinary governmental purposes, and where not affected by special constitutional provisions." see Ellis v. Greene, 191 N.C. at p. 765.
In Clark v. Sheldon, 106 N.Y. 104, an act was held constitutional "directing and providing for the application of taxes assessed upon any *Page 123 
railroad in a town, city or village towards the redemption of bonds issued by the municipality to aid in the construction of such railroad," and pointed out that this did not impose a tax upon property in other portions of the county for the benefit of any township, city or town, but simply appropriated the taxation upon such railroad for the benefit of the municipality which had incurred a burden to procure the building of such railroad. The same view is upheld in Commissioners v. Lucas, 93 U.S. 108.Jones v. Commissioners, 143 N.C. 59. See Board of Trustees v. Webb,155 N.C. 379; Commissioners v. Commissioners, 157 N.C. 514; Woodall v.Highway Commission, 176 N.C. 377. An interesting discussion, where the tax is not uniform and ad valorem, is found in Anderson v. Asheville,194 N.C. 117. For the reasons given, the judgment below is
Reversed.
STACY, C. J., dissents.